**Donald W. McLEAN, an individual,**
**Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, National Rural Letter Carriers' Association, an unincorporated association, Pennsylvania Rural Letter Carriers' Association, an unincorporated association, Defendants.**

**Civ. A. No. 80–1626.**

United States District Court,
W. D. Pennsylvania.

Aug. 13, 1982.

Samuel Blaufeld, Pittsburgh, Pa., for plaintiff McLean.

Stanley W. Greenfield, Greenfield & Murtagh, Pittsburgh, Pa., for Unions.

Bruce Joel Jacobsohn, Senior Asst. Labor Counsel, Labor Law Div., U. S. Postal Service, Eastern Region, Philadelphia, Pa., for Postal Service.

## OPINION

MANSMANN, District Judge.

This matter is before the Court on a Motion to Strike filed by Defendant United States Postal Service ("Postal Service") and on Motions for Summary Judgment[1] filed by Defendant Postal Service and Defendant Unions, The National Rural Letter Carriers' Association and the Pennsylvania Rural Letter Carriers' Association ("Unions"). Plaintiff, Donald W. McLean, brought this action against his employer, the Postal Service, over the computation of a back pay award, and against the Unions alleging a breach of their statutory duty of fair representation over the manner in which they processed Plaintiff's grievance. For the reasons set forth below, Defendants' Motions for Summary Judgment are granted.[2]

\*      \*      \*      \*      \*      \*

## FACTUAL BACKGROUND

The facts of this case may be summarized as follows:

Plaintiff is employed by the Postal Service as a rural letter carrier. In January 1979, Plaintiff was notified that the Postal Service intended to discharge him for allegedly falsifying information on his Postal Service employment applications. Shortly thereafter, the Unions filed a grievance on Plaintiff's behalf pursuant to Article XV of the National Collective Bargaining Agreement.

Plaintiff's grievance was denied at step 1 and step 2A of the negotiated grievance procedures. It was then appealed to step 2B.[3] Plaintiff's discharge became effective on March 23, 1978, while he was awaiting decision at step 2B.

Because Plaintiff was considered a "veteran preference eligible" under Article XVI of the Agreement and under Civil Service regulations,[4] he was entitled to appeal to the Federal Employees Appeals Authority ("FEAA") of the U. S. Civil Service Com-

---

1. The Postal Service has submitted an affidavit and exhibits in support of its "Motion to Dismiss or in the Alternative for Summary Judgment." Therefore, its Motion is properly a Motion for Summary Judgment and will be treated accordingly.

2. Because this Court is granting the Motions for Summary Judgment, it is unnecessary to rule on the Postal Service's Motion to Strike.

3. Grievances involving the discharge or discipline of an employee must be taken to step 2B rather than steps 3 and 4. Grievances which are not settled at step 2B may be referred directly to arbitration. Other types of grievances go from step 2A to steps 3 and 4.

4. See 5 C.F.R. § 752.201(a)(3) (1978). Also see 5 U.S.C. § 7511(a)(1)(B).

mission ("Civil Service Commission")[5] in lieu of going to arbitration. Under Article XVI, Section 6, of the Agreement, any "preference eligible" who takes such an appeal "thereby waives access to any procedure under (the) Agreement beyond Step 2B of the grievance-arbitration procedure." Thus, a "preference eligible" had the option of going outside the Agreement and taking a statutory appeal to the FEAA or of staying within the Agreement and submitting a grievance denied at step 2B to arbitration (with the authorization of the National Union's President).

Because an appeal to the FEAA had to be submitted within 15 days of the adverse action,[6] Plaintiff submitted an appeal even before he received a decision at step 2B of the grievance procedures. A few weeks later, the Postal Service denied his grievance at step 2B.

By decision dated October 6, 1978, the FEAA reversed the Postal Service's action in removing Plaintiff from his position. It recommended that the agency "cancel the personnel action" by which Plaintiff had been removed.

Although the FEAA's decision made no mention of back pay, the Postal Service informed Plaintiff that since his "restoration" was retroactive, he was entitled to apply "for lost wages under Public Law 89–380."[7]

Plaintiff returned to work in late October 1978. In February 1979, Plaintiff's attorney wrote to the Chief Appeals Officer of the MSPB, formerly the Chief Appeals Officer of the FEAA, since Plaintiff had not yet received his back pay. The Chief Appeals Officer responded that "(b)y restoring Mr. McLean to his position, the Postal Service has complied with our decision." He also stated that "(t)his office has no jurisdiction over matters concerned with money or lost wages." The Appeals Officer advised that "(i)f the problem is not resolved, he should file a claim with the Comptroller of the United States, Washington, D.C."

In April 1979, the Postal Service mailed Plaintiff a check in the amount of $5788.94 for his back pay.

Plaintiff took issue with the amount he received. Therefore, his attorney again wrote to the MSPB Chief Appeals Officer. The Officer again responded.

(T)he agency did comply with our decision and . . . the removal action was cancelled and Mr. McLean was awarded back pay. The matter which you want this office to address concerns his vehicle maintenance allowance which he was not paid during the time that he was off the rolls of the agency. This is a matter over which we do not have jurisdiction. If Mr. McLean believes that he is entitled to be paid the vehicle allowance for the approximately seventeen pay periods during which he was off the rolls of the agency, it would appear that his avenue of redress would be through the Postal Service Internal grievance system. If he is unsuccessful at that level, it would appear that his only relief is through the courts.

5. The FEAA was an office within the Civil Service Commission authorized to decide appeals from "adverse actions" in other federal agencies. *See* 5 C.F.R. §§ 752.203 and 772.101 (1978). A decision of the FEAA was effectively a decision of the Commission since the FEAA reported directly to the Commission and was authorized to make final decisions on appeals to the Commission. 5 C.F.R. § 772.101 (1978).

The FEAA and the Civil Service Commission no longer exist. Under the Civil Service Reform Act of 1978, effective January 1979, two new agencies were established. The Office of Personnel Management ("OPM") was created to assume many of the responsibilities of the former Civil Service Commission. 5 U.S.C. § 1101. The Merit Systems Protection Board

("MSPB") was established to perform the adjudicatory and prosecutorial functions of the former Commission. 5 U.S.C. § 1201. *See also* Reorganization Plan No. 2 of 1978. One of those functions is to handle appeals from discharged employees. 5 U.S.C. § 7701. Unlike the FEAA and the Commission, the MSPB is not office of OPM and in fact OPM is prohibited from interfering with the independent decision-making of the MSPB. 5 U.S.C. § 7701(d)(1).

6. 5 C.F.R. § 752.203 (1978).

7. Public Law 89–380 is the Back Pay Act of 1966, 5 U.S.C. § 5596.

It is undisputed that Plaintiff never filed a grievance, either through his agency's grievance procedure or through the negotiated grievance procedure established under the Collective Bargaining Agreement, over the alleged deficiencies in his back pay. Nor is there any evidence or assertion by Plaintiff that he notified the Office of the Comptroller with respect to his back pay.

\* \* \* \* \* \*

## THE COMPLAINT

■ Plaintiff filed the present action on November 12, 1980 pursuant to § 1208(b) of the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 1208(b),[8] and pursuant to § 301 of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185.[9] In this action, Plaintiff alleges that his back pay failed to include a "full vehicle allowance" of $2150; that the amount did not include $1130 that had allegedly been deducted for Plaintiff's outside earnings;[10] and that the pay lacked $3000 in attorneys' fees which had been incurred by Plaintiff in the proceeding before the FEAA. Plaintiff also asserts that the Unions failed to fairly and properly represent the Plaintiff during the processing of the grievance over his discharge.

Defendants have moved for Summary Judgment contending *inter alia* that Plaintiff's action is untimely and that Plaintiff has failed to exhaust his contractual and administrative remedies.

## I. CLAIM AGAINST THE POSTAL SERVICE

The Postal Service argues that Plaintiff has failed to exhaust the grievance-arbitration provisions of the National Agreement or the administrative procedures of the Civil Service Commission, or its successor, with respect to the matter of his back pay. According to the Postal Service, the amount which Plaintiff received as backpay is a matter which can be grieved under the broad definition given to a grievance by Article XV of the negotiated Agreement.[11]

Plaintiff maintains that the favorable decision of the FEAA automatically exhausted his remedies. He further contends that the computation of his backpay is not a proper subject of a contractual grievance.

■ Federal law is clear that an employee must first attempt to exhaust the contractual grievance procedures before filing an action against his or her employer for breach of the collective bargaining agreement.[12] *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Exceptions to this general rule

---

**8.** Section 1208(b) provides:

Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy. 39 U.S.C. § 1208(b).

**9.** Section 1208 of the PRA, and not § 301 of the LMRA, actually controls this case. Section 1208 is considered the analogue of § 301 for Postal Service Employees and Postal Unions. *Nat. Ass'n of Letter Carriers, AFL–CIO v. U. S. Postal Service*, 590 F.2d 1171 (D.C.Cir.1978). Since the language of § 1208 tracks that of § 301, cases decided under the latter are often used to interpret the former, *Columbia Local, American Postal Workers Union, AFL–CIO, v. Bolger*, 621 F.2d 615 (4th Cir. 1980); *Nat. Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915 (2d Cir. 1971).

**10.** The Postal Service denies that any outside earnings were deducted from the back pay.

According to the Postal Service, $1,130 was deducted for a "prior indebtedness."

**11.** Article XV, section one, states:

A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Unions which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

**12.** This Court will use cases decided under § 301 as an "interpretive guide" to § 1208(b). The Court, however, does not consider itself bound by § 301 case law where any concerns unique to Postal employees warrant the application of standards different from those applied to private sector employees. *See Smith v. Daws*, 614 F.2d 1069 (4th Cir. 1980).

have been created for circumstances where the employer's conduct amounts to a repudiation of the contractual procedures. *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). For example, where the employer denies that it is bound by the collective bargaining agreement, the employer is estopped by its own conduct to rely upon the employee's failure to exhaust as a defense. *Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362 (9th Cir. 1981).

Another exception to the general requirement of exhaustion is the situation where the employee's efforts to pursue the contractual remedies would be absolutely futile. *Glover v. St. Louis—San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). An example is a situation where the subject of an employee's complaint is racial discrimination yet those who administer the contractual grievance procedures are the very persons accused of engaging in the discrimination. *Id.*

An additional exception to the general rule is the situation where the union has breached its duty of fair representation in its handling of the employee's grievance. *Vaca v. Sipes*, 386 U.S. at 185–186, 87 S.Ct. at 914–915. For example, the employee's failure to exhaust his contractual remedies will not defeat his breach of contract action where the union has the sole power under the contract to process the grievance yet has wrongfully refused to do so. *Id.*

■ In the case at bar, this Court is of the opinion that Plaintiff could have resorted to his contractual remedies with regard to the computation of his back pay. We agree with the Postal Service that the definition of a "grievance" provided by the negotiated Agreement is sufficiently broad so as to encompass the matter here in question. Further, the Supreme Court has stated that "(a)part from matters that the parties specifically exclude, all of the questions on which the parties disagree must . . . come within the scope of the grievance and arbitration provisions of the collective agreement." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*,

363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The Agreement in this case does not specifically exclude the matter here in issue. Thus, Plaintiff could have filed a grievance in lieu of filing the instant suit.

■ Plaintiff does not assert, nor does the record suggest, that Plaintiff attempted to exhaust his contractual remedies with respect to the computation of his back pay. Further, Plaintiff's situation does not fall into one of the exceptions to the general requirement that contractual remedies first be exhausted. In this regard, the Postal Service has not denied that it is bound by the terms of the Collective Bargaining Agreement nor has it otherwise repudiated the contractual procedures. In addition, Plaintiff has not demonstrated that resort to the contractual procedures would have been entirely futile. Finally, there is no evidence that the Unions breached their duty of fair representation with regard to the matter of Plaintiff's back pay. Plaintiff does not allege that the Unions wrongfully refused to file or process a grievance over the computation of his back pay. Indeed, there is no evidence that Plaintiff ever requested that a grievance be filed over this issue. All of Plaintiff's contentions as to the Unions' alleged breach of duty concern the grievance over his discharge.[13] That grievance terminated at step 2B of the contractual grievance procedures. Plaintiff had, at that time, already elected to file a statutory appeal to the FEAA. The matter of the discharge was resolved in Plaintiff's favor and Plaintiff clearly is not appealing that decision. The dispute over Plaintiff's back pay arose subsequent to his reinstatement and was not part of the FEAA's determination. In fact, it was the Postal Service who, on its own initiative, notified Plaintiff as to his entitlement to back pay and who calculated the pay. Disagreement then arose between Plaintiff and the Postal Service concerning the calculation of the pay. It is this disagreement which engendered the instant action against the Postal Service.

**13.** The Court will address Plaintiff's contentions later in this Opinion.

Since Plaintiff has not proffered evidence of a breach of duty by the Unions with respect to the matter of his back pay, he may not avail himself of the exception to the general rule that contractual remedies must first be exhausted.

In summary, Plaintiff has failed to exhaust his contractual remedies against the Postal Service prior to filing this action and therefore is not properly before this Court. We note that Plaintiff apparently also chose not to pursue other avenues of redress such as those suggested by the Chief Appeals Officer of the MSPB.

\*    \*    \*    \*    \*    \*

Assuming *arguendo* that Plaintiff's situation did fall into one of the exceptions to the general requirement of exhaustion or that Plaintiff's prior grievance over his discharge did exhaust his contractual remedies, Plaintiff's action against the Postal Service is untimely.

The Postal Service argues that the statute of limitations appropriate for this action is the six-month limitations period applicable to the filing of unfair labor practice charges with the National Labor Relations Board. The Postal Service cites the recent case of *Badon v. General Motors Corp.*, 679 F.2d 93, 110 L.R.R.M. 2562 (6th Cir. 1982), in support of its argument. Plaintiff argues that the appropriate statute of limitations is the Pennsylvania statute of six years applicable to an action upon a contract.

The United States Supreme Court has held that the appropriate state statute of limitations is to be used in determining the timeliness of a suit brought under § 301. *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–1113, 16 L.Ed.2d 192 (1966). In *Liotta v. National Forge Co.*, 629 F.2d 903 (3d Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981),[14] the

Third Circuit determined that the appropriate limitations period for § 301 actions was the state statute of limitations applicable to suits seeking to vacate an arbitration award. *Accord United Postal Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981).

Since § 1208(b) is the analogue of § 301 for Postal Service employees and Postal Unions,[15] the statute of limitations appropriate for § 1208(b) actions should be that applicable to actions under § 301. There are no countervailing considerations unique to Postal workers which would mandate the application of a different limitations period. Thus, the statute of limitations which controls this case is the Pennsylvania statute for actions to vacate arbitration awards. Since the events here in question precede the enactment of the 30-day statute, the applicable limitations period is 90 days under the former Pennsylvania statute 5 P.S. § 173 (repealed). Plaintiff's action against the Postal Service is untimely under the 90-day statute since the statute began to run in April when Plaintiff received the check for his back pay.

The fact that Plaintiff is not appealing from an adverse arbitration award does not render the 90-day limitations period inappropriate. The only reason Plaintiff is not appealing from an adverse arbitration decision is because he did not properly exhaust his contractual remedies.

The 90-day limitations period remains appropriate even if Plaintiff was precluded from pursuing his claim to arbitration by a breach of duty on the part of the Unions. *See generally, Fields v. Babcock & Wilcox*, 108 L.R.R.M. 3150 (W.D.Pa.1981).

We reject the six-month limitations period suggested by the Postal Service even though in this particular case, the same result would follow from the application of either the 90-day period or the six-month

---

**14.** In *Liotta*, the arbitration award was issued in 1976 when the Pennsylvania statute of limitations for an appeal from an arbitration award was three months. *See* 5 P.S. § 173 (repealed). The Uniform Arbitration Act replaced the three month statute of limitations with a 30-day limi-

tations period, effective in December 1980. 42 Pa.C.S.A. § 7301, 7314(b) (Purdon 1981).

**15.** *Nat. Ass'n of Letter Carriers, AFL–CIO v. U. S. Postal Service*, 590 F.2d at 1174.

period. In *Badon*, cited by the Postal Service, the Court had no state statute of limitations to apply since Michigan has excluded labor disputes from statutory arbitration and has provided no alternative limitations period for actions to vacate labor arbitration awards. Hence, *Badon* is clearly distinguishable from the instant case where Pennsylvania has provided a limitations period.

We also reject Plaintiff's argument that the Pennsylvania limitations period for common law contract actions is appropriate. The Supreme Court has already rejected this argument in *United Postal Service, Inc. v. Mitchell, supra*, and other courts have followed suit. *See e.g. Talley v. U. S. Postal Service*, 526 F.Supp. 151 (D.Minn.1981) (*"Talley I"*).

\* \* \* \* \* \*

■ In light of the foregoing, it is unnecessary to resolve those questions raised by the Postal Service's Motion to Strike. This Court, however, feels that it is important to comment with regard to Plaintiff's claim for punitive damages. At oral argument, counsel for Plaintiff argued that the Postal Service is guilty of outrageous conduct and that punitive damages were sought as relief for something akin to the tort of wrongful discharge recognized under Pennsylvania law.[16] Plaintiff's counsel, however, could provide no basis for his claim in federal law. Indeed, the case law indicates that punitive damages may not be recovered against the Postal Service. *See Bowen v. U. S. Postal Service*, 103 L.R.R.M. 2366 (W.D.Va.1979).

## II. CLAIM AGAINST THE UNIONS

The record is devoid of any evidence showing that the Unions breached their duty of fair representation with regard to the computation of Plaintiff's back pay. As already discussed, Plaintiff does not allege that the Unions refused to file or process a grievance over the matter of back pay.

■ All of Plaintiff's contentions regarding the Unions' conduct concern the grievance filed over his discharge. That grievance terminated at step 2B of the negotiated grievance procedures.[17] If Plaintiff had wanted to assert a claim against the Unions based on their handling of the grievance over his discharge, he should have done so when his grievance was denied at step 2B since the Unions' participation in the matter terminated at that point. Thus, the statute of limitations for an action against the Unions based upon their handling of the grievance began to run at the termination of the grievance.

Assuming *arguendo* that Plaintiff could show a breach of duty by the Unions with respect to his grievance, his present action against the Unions is untimely for many of the same reasons set forth earlier in this Opinion. The Unions argue that the 90-day limitations period is applicable to bar the action against them. We agree.

In *United Postal Service, Inc. v. Mitchell, supra*, the Supreme Court found that the District Court had acted properly in applying New York's 90-day statute of limitations for actions to vacate arbitration awards to the employee's § 301 suit against his employer and against the Union. The Court did not dichotomize the two Defendants for purposes of the statute of limitations. Further, it should be noted that an employee's claim against a Union for breach of the duty of fair representation is "part and parcel of his § 301 action" against his employer. *Vaca v. Sipes, supra* 386 U.S. at 186, 87 S.Ct. at 914. Other Courts have stressed the importance of maintaining the same statute of limitations for both the employer and the Union when the action is brought under § 301. *See Talley v. United States Postal Service*, 532 F.Supp. 786, 788 (D.Minn.1982) (*"Talley II"*).

---

**16.** *See e.g. Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979); *Boresen v. Rohm & Haas, Inc.*, 526 F.Supp. 1230 (E.D.Pa. 1981); *Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super.Ct. 560, 422 A.2d 611 (1980); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974).

**17.** Plaintiff admits that the Unions had no duty to represent him once he appealed to the Civil Service Commission. *See* Deposition of Donald W. McLean (Dec. 28, 1981) at 37.

Thus, it is well settled that the statute of limitations for a § 301 action will apply to the entire action; that is, it will apply to the claim against the Union as well as that against the employer. *See e.g. Fields v. Babcock & Wilcox, supra.* As discussed earlier, lack of countervailing factors warrant the application of the limitations period for § 301 actions to suits brought under § 1208(b). *Talley II, supra* at 789. Therefore, Plaintiff's claim against the Unions is untimely. It should be noted that the same result would follow even if the statute of limitations period had begun to run when Plaintiff received the check for his back pay.