**Charles WILKEY, Plaintiff,**

**v.**

**MEIJER, INC. and Local 951, United Food & Commercial Workers International Union, AFL–CIO and CLC, Defendants.**

**No. G81–48 CA1.**

United States District Court, W.D. Michigan, S.D.

Oct. 4, 1982.

Robert J. Eleveld, Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., for plaintiff.

Jon G. March, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., Theodore Sachs, Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, Detroit, Mich., for defendants.

## OPINION RE: DEFENDANTS'
## MOTION TO DISMISS

HILLMAN, District Judge.

Plaintiff seeks damages from his former employer for alleged wrongful discharge. Further, he claims that his bargaining representative, Local 951, breached its duty of fair representation by failing to take his case to arbitration after he was discharged. In June, 1982, this court denied a motion by the Union for summary judgment after finding that there existed issues of material fact relevant to the question whether the Union breached its statutory duty.

The Union and Meijer have since sought and been granted leave to amend their answers in order to plead the statute of limitations as an affirmative defense. The case is now before the court on motions by the defendants for dismissal on the ground that the case is barred by the six-month statute of limitations contained in section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b). For the reasons that follow, these motions are denied.

### I. BACKGROUND

Plaintiff alleges that on June 5, 1979, he was suspended from his job as a night shelf stocker at Meijer's Thrifty Acres in Battle Creek, Michigan, for theft of two bags of Fritos from a vending machine in the employees' break room. On June 11, 1979, that suspension was converted by the employer to a discharge.

Plaintiff met with representatives of his union and a grievance was prepared and submitted to the company on June 22, 1979. The grievance was submitted one day after the deadline for filing under the collective bargaining agreement. Nevertheless, the company heard the grievance and denied it.

Local 591's executive board then held a meeting to determine whether to take the grievance to arbitration and on August 13, 1979, voted against arbitrating plaintiff's grievance.[1]

On March 24, 1980, plaintiff filed an unfair representation charge with the National Labor Relations Board. On April 10, 1980, this charge was dismissed as untimely under the six-month limitation period prescribed in section 10(b) of NLRA, 29 U.S.C. § 160(b).

On January 12, 1981, plaintiff filed the instant action in the Circuit Court for the County of Kent and the case was removed to this court on February 2, 1981.

### II. DISCUSSION

This is a "hybrid 301" action. It is so termed because it is brought pursuant to section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. That section confers upon federal district courts jurisdiction to hear suits for violation of contracts between an employer and a labor organization. As Justice Stewart explained in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981):

> "The contract claim against the employer is based on § 301 of the LMRA, but the duty of fair representation is derived from the NLRA. Yet the two claims are inextricably interdependent." (Footnote omitted.)

451 U.S. at 66–67, 101 S.Ct. at 1565 (Stewart, concurring). Justice Stewart then explained this interdependence between the cause of action against the employer and the one against the union:

> " 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.' *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–571, [96 S.Ct. 1048, 1059, 47 L.Ed.2d 231]. Accordingly, a plaintiff must prevail upon his unfair representa-

---

1. According to the affidavit of the union representative who was responsible for processing plaintiff's grievance, the Executive Board's decision was rendered August 13, 1979. The Summary Report in which the NLRB dismissed the charge against the union states that the decision was made in early July, 1979. This factual discrepancy is of no consequence in the resolution of the instant motions.

tion claim before he may even litigate the merits of his § 301 claim against the employer."

*Id.*

Section 301 of the LMRA contains no statute of limitations. In *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192, the Court held that federal courts should apply the most analogous state statute of limitations to section 301 actions as a matter of federal law. The United States Court of Appeals for the Sixth Circuit has consistently held that Michigan's tort statute governs the timeliness of section 301 suits. *See Echols v. Chrysler Corporation,* 633 F.2d 722 (6th Cir.1980).

In *Mitchell, supra,* the Court reaffirmed its holding of *Hoosier Cardinal* that the timeliness of section 301 suits is to be determined by reference to the appropriate state statute of limitations, and stated further that the determination of which limitation period is most "appropriate" is to depend upon "an examination of the nature of the federal claim and the federal policies involved." *United Parcel Service, Inc. v. Mitchell, supra* 451 U.S. at 60–61, 101 S.Ct. at 1562–63. In *Mitchell,* the Court found that New York's 90-day statute of limitations for actions to vacate arbitration awards should be applied to a hybrid section 301 action in which plaintiff sought to recover from his employer for alleged wrongful discharge in violation of his bargaining agreement and from his union for breach of its duty of fair representation. The court selected the 90-day statute because "one of the leading federal policies in this area is the 'relatively rapid disposition of labor disputes.'" 451 U.S. at 63, 101 S.Ct. at 1564, quoting *Hoosier Cardinal,* 383 U.S. at 707, 86 S.Ct. at 1114.

On May 25, 1982, the United States Court of Appeals for the Sixth Circuit decided *Badon v. General Motors Corp.,* 679 F.2d 93 (6th Cir.1982). In *Badon,* the Court of Ap-

peals abandoned the three-year limitation period prescribed in *Echols* and other cases, and held that section 301 hybrid actions in Michigan are governed by the six-month limitation period set forth in section 10 of the NLRA, 29 U.S.C. § 160(b). *Badon, supra* at 99. The *Badon* panel found itself unable to follow the specific directives of *Hoosier Cardinal* and *Mitchell,* because it could find no appropriate Michigan statute of limitations that would advance the policy of resolving labor disputes quickly. Specifically, the court rejected the Michigan statute of limitations for actions to vacate arbitration awards,[2] because under the State's Revised Judicature Act, Chapter 50, that limitation period was expressly inapplicable to collective contracts between employers and employees or associations of employees in respect to terms or conditions of employment. M.C.L.A. § 600.5001(3).

Therefore, the panel adopted a federal statute of limitations from the NLRA. In support of this choice, the court noted that

"the union's duty of fair representation springs from the National Labor Relations Act. In essence, it is this duty, or more precisely, its breach, which opens the door to section 301 of the Labor Management Relations Act to the claims of unionized employees. Hence it is not inappropriate to look to the limitations period contained in that statute, the National Labor Relations Act, when adjudging the timeliness of section 301 hybrid actions."

*Badon, supra* at 100.[3]

When plaintiff filed this lawsuit, the applicable limitation period had been established beyond doubt in this circuit to be three years. *See Badon, supra* at 95 and the cases cited therein. His action clearly was filed within that period. Under the rule of *Badon,* however, the case is time-barred. In determining whether to give a statute of limitations retroactive effect, the

**2.** Court Rule G.C.R.1963, 769.9(2).

**3.** The *Badon* panel could have disposed of the case without deciding the statute of limitations issue. Badon's lawsuit, filed nearly six years after the cause of action accrued, would have been time-barred by the existing three-year limitation period under the rule of *Echols v. Chrysler Corp., supra.*

court looks to the three-part test set forth in *Chevron Oil v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Furthermore, it appears that the rule in this circuit requires that the party seeking to invoke the *Chevron Oil* case in order to avoid retroactive application of the limitation period bears the burden of showing that all three parts of the test favor prospective-only application. *Cochran v. Birkel,* 651 F.2d 1219, 1223 n. 8 (6th Cir.1981); *Valencia v. Anderson Brothers Ford,* 617 F.2d 1278, 1288–89 (7th Cir.1980).

The first part of the *Chevron* test requires the court to ascertain whether the decision to be applied nonretroactively establishes a new principle of law, either by overruling clear past precedent on which litigants have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. *Chevron Oil, supra* 404 U.S. at 106, 92 S.Ct. at 355. Without doubt, *Badon* is a sharp departure from existing precedent, i.e., *Echols v. Chrysler Corp., supra.* As the *Badon* panel noted, "[t]his court has consistently held that Michigan's tort statute (three years) governs the timeliness of section 301 actions." *Badon, supra* at 95. Therefore, application of the first *Chevron Oil* factor favors nonretroactive application of the *Badon* case.

The second *Chevron Oil* factor raises the issue whether retroactive application of the new rule will "further or retard" the operation of the rule in question. The court detects two significant federal policies whose operation would be affected by the retroactive application of the *Badon* case. On the one hand, Congress has declared to be the policy of the United States

> "to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing...."

Section 1, National Labor Relations Act, as amended, 29 U.S.C. § 151.

High in priority among the rights granted by Congress to individual employees is the right of fair representation by their unions. 29 U.S.C. § 185; *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Likewise, section 301 advances a strong federal interest in granting employees a remedy against their employer for breach of the employment contract. Retroactive application of the *Badon* decision would deprive plaintiff in this case of the benefit of these long-standing federal policies.

On the other hand, Congress and the federal courts have determined that labor disputes should be resolved with dispatch. In section 10(b) of NLRA, Congress established a short (six month) limitation period for filing unfair labor charges under the Act. Furthermore, in *Mitchell, supra,* the Court noted that one of the leading federal policies in the labor arena is the rapid disposition of labor disputes. In *Mitchell,* the Court adopted a 90-day limitation period. Therefore, retroactive application of a six-month period is consistent with Supreme Court precedent, at least to the extent that it would advance the policy of speedy disposition.

It is difficult to imagine how retroactive application of *Badon* will either further or retard the operation of the policy calling for speedy resolution of labor cases. To be sure, summary dismissal is efficient and swift justice. Yet, where a limitation period is imposed to effect prompt disposal of labor disputes, the goal is achieved by motivating aggrieved parties to make timely filings of their complaints. Retroactive application of the six-month limitation period can have no such motivating effect on litigants already before the court who have done and are doing all they can to bring their cases to conclusion. Nothing in the federal labor policy supports a rule that effects unexpected, summary disposition of timely-filed cases without some consideration of the merits. In short, the federal

policies on which the short statute of limitation period is based would not be advanced by retroactive application of *Badon,* except to the extent that summary disposal of otherwise timely-filed cases serves the fundamental concern of "efficiency." *Badon, supra* at 97.[4]

Therefore, I conclude that the second part of the *Chevron Oil* test supports prospective-only application of the *Badon* rule in this case.

Turning next to the third and final *Chevron Oil* factor, the court must "weigh the inequity imposed by retroactive application" of the new rule. 404 U.S. at 107, 92 S.Ct. at 355. If such application will produce " 'substantial inequitable results . . . there is ample basis in . . . [Supreme Court] cases for avoiding the "injustice of hardship" by a holding of nonretroactivity.' " *Id.,* citing *Cipriano v. City of Houma,* 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969).

Plaintiff filed his lawsuit well within the three-year period that governed these actions prior to *Badon.* By requiring courts to explore the potential inequity of retroactive application in this case, the *Chevron Oil* test looks to whether the result is just, and whether it is "conformable to the principles of justice and right." Black's Law Dictionary 482 (5th Ed.1979). *See Kennard v. United Parcel Service,* 531 F.Supp. 1139, 1146–47 (E.D.Mich.1981).

As the Court noted in *Chevron Oil,*

> "It would also produce the most 'substantial inequitable results,' *Cipriano v. City of Houma, supra* at 706 [89 S.Ct. at 1900] to hold that respondent 'slept on his rights' at a time when he could not have known the time limitation that the law imposed upon him."

*Supra* 404 at 108, 92 S.Ct. at 356. In denying retroactive application to the limitation period at issue in *Chevron Oil,* the Court refused to deprive the plaintiff of his day in court when "the most he could do was to rely on the law as it then was." *Id.* at 107, 92 S.Ct. at 355.[5] Therefore, by the Court's

---

**4.** The court notes the existence of numerous other federal policies which could be explored under the second *Chevron Oil* test. For instance, the Supreme Court has expressed a strong preference that labor disputes be resolved without resort to the courts if at all possible. In *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Court stated that "Courts and arbitration in the context of most commercial contracts are resorted to because there has been a breakdown in the working relationship of the parties: such resort is the unwanted exception." 363 U.S. at 581, 80 S.Ct. at 1352.

However, the Court has never held that honest disputes should not be adjudicated and when the "private system of adjudication" breaks down, "the public system remains close at hand in order to protect the employee's right to be heard by a process that is fundamentally fair." *Badon, supra* at 97.

Yet another reason for imposing short limitation periods on section 301 cases is to afford finality to the decisions reached in the internal, private dispute resolution process. By reducing the exposure of these decisions to collateral attack, the short limitation period adds to the efficiency and credibility of the private system. *See Badon, supra* at 98. Application of *Badon* prospectively-only would retard the policy of affording finality to these decisions, but it would not visit any substantial effect on the parties that they did not expect to begin with. Thus, because the policy of finality is designed to serve the needs and expectations of the parties to the collective bargaining agreement, that policy is not served by attaching finality where finality was not expected.

**5.** The court notes that the plaintiff in *Badon* was not permitted to rely on the statute of limitations announced in prior cases. *See Echols v. Chrysler Corp., supra.* However, even under the prior statute of limitations, Badon's claim was time-barred since it was filed nearly six years after his cause of action accrued. Furthermore, the instant action is not typical of cases in which judicial decisions are applied retroactively to the litigants at bar whose reliance on a certain legal rule or rules may or may not have been entirely reasonable. Indeed, the exceptions to the general rule of retroactive application are specifically tailored to relieve parties from the inequities and surprises that they incur by reliance on legal rules that is wholly justified and reasonable. It was such consideration that persuaded the Supreme Court to relieve the respondent in *Chevron Oil* of the retroactive application of a limitation period, and the same considerations apply in the instant case with equal force.

In short, it is one thing to bind a party to the results produced in his own litigation, and quite another to bind a third party to that same result reached long after that third party has relied on a different set of rules.

standards of "inequity" as applied in *Chevron Oil,* the proper result under the third test is prospective-only application.

## CONCLUSION

In reaching the decision set forth herein, the court has been fully apprised of cases within both the Eastern and Western Districts of Michigan reaching contrary results on similar facts. However, basic concepts of fundamental fairness mitigate firmly against application of a new and wholly unexpected rule to a litigant whose reliance on the well-established state of affairs was perfectly reasonable and proper. So firmly established was the three-year period of limitations when plaintiff filed this lawsuit that neither defendant raised the issue in any manner until the *Badon* decision was announced.

For the reasons stated above, I find that under the rule of *Chevron Oil, supra, Badon* should not be applied retroactively to the facts of this case. Therefore, since plaintiff filed his lawsuit within the statute of limitation period applicable at that time, it cannot be dismissed under the rule of *Badon.*