George LAMORE, Plaintiff,

v.

INLAND DIVISION OF GENERAL MO-
TORS CORPORATION and United Rub-
ber Workers Local 87, Defendants.

No. C–1–76–426.

United States District Court,
S.D. Ohio, W.D.

Oct. 14, 1982.

---

George Lamore, pro se.

Sorrell Logothetis, Dayton, Ohio, for defendants.

DECISION AND ENTRY SUSTAINING UNITED RUBBER WORKERS' MOTION FOR SUMMARY JUDGMENT; TERMINATION ENTRY; FINAL JUDGMENT TO BE ENTERED UPON DEFENDANTS' FILING A PROPERLY CERTIFIED COPY OF APPLICABLE COLLECTIVE BARGAINING AGREEMENT

RICE, District Judge.

I. INTRODUCTION

Currently pending before the Court is a motion for summary judgment (doc. # 72) which has been filed by Defendant United Rubber Workers Local 87 (Local 87), under Fed.R.Civ.P. 56. The history of this litigation is set forth in the Order and Remand filed by the Court of Appeals for the Sixth Circuit in this matter (doc. # 61). The pertinent facts are as follows: Plaintiff was hired at the Inland Division of General Motors Corporation (Inland) in 1964, and soon joined Local 87. During 1971, he was suspended four times by Inland, but did not file a grievance in timely fashion following any of the suspensions. Plaintiff did attempt to file a grievance in March, 1972 based on the 1971 suspensions, but it was rejected as untimely. On October 5, 1972, Inland discharged Plaintiff for insubordination for overstaying a coffee break by 25 minutes and for refusing to sign a suspension notice. Plaintiff never filed a grievance thereafter concerning his discharge.

Plaintiff filed the present action on July 23, 1975, under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, alleging that Local 87 breached its duty of fair representation and that Inland breached the collective bargaining agreement. Local 87 moved for summary judgment, but Judge Timothy Hogan overruled the motion, finding that genuine issues of material fact existed regarding the Local's alleged failure to properly represent Plaintiff during his suspensions and after his discharge (doc. # 41). The Court rejected Plaintiff's allegation that he failed to file a grievance after his discharge because of his "depressed state of mind," *id.* at 7 n. 2, although it did find that other disputed facts might support a finding of futility. *Id.* at 6–7. However, after additional briefing, Judge Hogan reconsidered his previous ruling, and sustained Local 87's motion (doc. # 49), finding that, based on the record, it would not have been futile for Plaintiff to file a grievance regarding the suspensions or discharge. He ultimately dismissed the entire lawsuit (doc. # 54).

Plaintiff appealed that ruling to the Sixth Circuit, and, in an order dated May 28, 1981, a panel of the Sixth Circuit affirmed in part, reversed in part, and remanded for proceedings consistent with the order. *See, Lamore v. Inland Division of General Motors Corp.*, 659 F.2d 1081 (6th Cir.1981) (hereinafter Appellate Order).[1] In particular, the Order stated that:

Although the district court considered the futility issue after receiving special briefing, we believe that additional fact finding is warranted in this case. Lamore's case of meningitis may have affected him emotionally as well as leaving him physically incapacitated. Lamore's

---

1. The Sixth Circuit did not publish its decision in the present case. *See, Lamore v. Inland Div. of General Motors Corp.*, 659 F.2d 1081 (6th Cir.), *cert. denied*, 454 U.S. 900, 102 S.Ct. 404, 70 L.Ed.2d 217, *reh'g.* denied, 454 U.S. 1093, 102 S.Ct. 661, 70 L.Ed.2d 633 (1981). The Sixth Circuit's Order may also be found herein at doc. # 61.

emotional difficulties, when coupled with the fact that he has prosecuted this action *pro se,* require a more fully-developed record than would normally be the case. Lamore should be given the opportunity to more fully develop his claim that it would have been futile for him to have filed a grievance because of the attitudes of union leaders to him.

The scope of the union's duty to this disabled member can only be determined by considering all the relevant facts surrounding his dismissal. These include evidence of the attitude of union leaders toward Lamore when they processed his prior grievances, and their knowledge of the events which resulted in his dismissal. This does not require the district court to predict what the union would have done had Lamore filed a grievance, but does require a finding of whether the union acted in bad faith, or indicated to Lamore that it would not adequately pursue his grievance.

The district court properly dismissed the action against Inland. The evidence of insubordination was good cause for Lamore's discharge.

*Id.* at 4–5.

On September 2, 1981, this case was transferred from the docket of Judge Hogan to the docket of this Court. (doc. # 63). Local 87, the remaining Defendant, thereupon moved for summary judgment (doc. # 72), based on the following grounds: (1) that following the remand, recovery against the union in a § 301 suit was impossible when no breach of contract could be proved; and (2) that the record before the Court, in any event, indicated that it would not have been futile for Plaintiff to file a grievance following his discharge.

■ It is true, of course, that a district court may not deviate from any specific issues ruled upon by an appellate court, pursuant to which a mandate has been issued. *In re United States Steel,* 479 F.2d 489, 493–94 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973). However, the Court can reach issues left

open by the mandate. *Abell v. Anderson,* 148 F.2d 372, 374 (6th Cir.), *cert. denied,* 326 U.S. 731, 66 S.Ct. 39, 90 L.Ed. 435 (1945). In the present case, the Court feels that the effect, if any, of the Sixth Circuit's dismissal of Inland as a party defendant has not been expressly or impliedly addressed by the Order and Mandate. For this reason, the Court asked the parties to further brief the point (doc. # 74). Local 87 filed an additional brief, and also raised therein the defense that the Plaintiff's action may be barred by the statute of limitations (doc. # 75). Plaintiff has not responded either to Local 87's most recent motion for summary judgment, or to the Court's request for further briefing.

Having carefully reviewed the issues of law presented by Local 87's renewed motion for summary judgment and those matters presented in Local 87's additional memorandum, the Court finds that the present action must be dismissed based on Plaintiff's failure to commence this action within the time limits set forth in Ohio Rev.Code Ann. § 2711.13. Accordingly, there will be no need for further development of the record herein by the parties, despite the mandate's directive of additional fact-finding on the issue of futility.

## II. STATUTE OF LIMITATIONS

■ Congress did not enact a statute of limitations governing actions brought under § 301, and to determine the timeliness of such suits, a federal court must "apply the most analogous state statute" of limitations. *Badon v. General Motors Corp.,* 679 F.2d 93, 95 (6th Cir.1982) *(Badon ).* See also, *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966) *(Hoosier Cardinal ).* In *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) *(Mitchell ),* the Supreme Court considered the issue of which statute of limitations might appropriately be selected in a § 301 action wherein the employee's grievance had been submitted to arbitration. Although the Court of Appeals in *Mitchell* had applied the state statute of

limitations for actions involving a breach of contract, *see, id.* at 59, 101 S.Ct. 1562, the Supreme Court concluded that the suit involved was "more analogous to an action to vacate an arbitration award than to a straight contract action." *Id.* at 62, 101 S.Ct. at 1564. Because the employee in *Mitchell* was required to illustrate a breach of the union's duty of fair representation prior to reaching the merits of his contract claim, *see, id.,* and because the unfair representation claim was considered by the Court to be "more a creature of 'labor law' as it has developed since the enactment of § 301 than it is of general contract law," *id.* at 63, 101 S.Ct. at 1564, the Supreme Court applied the pertinent state statute of limitations for actions to vacate arbitration awards rather than the state statute of limitations for actions based on contracts. *Id.* Thus, the Supreme Court reversed the decision of the Court of Appeals, and accepted the District Court's decision to bar Mitchell's action by virtue of the application of the ninety day limitations period contained in the New York State statute on vacation of arbitration awards. *See, id.* at 59, 64, 101 S.Ct. at 1562, 1564.

In *Badon,* 679 F.2d 93 (6th Cir.1982), the Sixth Circuit considered the potential application of *Mitchell* in an action involving a grievance which had *not* been submitted to arbitration, but which nonetheless had become "final through the operation of the collectively bargained-for private system of dispute resolution." *Id.* at 98. Despite the fact that unlike the grievance in *Mitchell,* Badon's claim had never been processed beyond the point of the original denial of his claim by the company, *see, · id.* at 95, the Sixth Circuit concluded that it would apply the rule in *Mitchell,* which required selection of the state statute of limitations for actions to vacate arbitration awards, if such

a statute existed.[2] Specifically, the Sixth Circuit stated:

> Unlike Badon's complaint, Mitchell's grievance had been submitted to arbitration. We do not, however, feel that this difference distinguishes the underlying rationale of *Mitchell.* Where the parties have contracted to settle claims among themselves, their final decisions should not be exposed to collateral attack for long periods but should become final rather quickly.

*Id.* at 98. Based on this reasoning, the Court concluded:

> Accordingly, where an employer's decision has become final through the operation of the collectively bargained for private system of dispute resolution, the rule of *Mitchell* applies and the state statute of limitations pertaining to vacation of arbitration awards will be utilized in subsequent federal court proceedings. This rule applies to Badon's claim against General Motors. *Although that claim was never heard by an impartial panel because of the union's failure to appeal it,* the dispute was resolved and became final according to the contractually established resolution process.

*Id.* (emphasis added).

The Sixth Circuit further extended Mitchell's application, and the use of arbitration statutes of limitation to unfair representation claims against a union. Although the Court recognized that there were distinctions between § 301 claims against the union and the employer, it determined that the same statute of limitations should be applied to both. *Id.,* citing *Gallagher v. Chrysler Corp.,* 613 F.2d 167, 168 (6th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980).[3]

---

**2.** In *Badon,* the relevant Michigan arbitration statute specifically excluded labor disputes, and accordingly, in the absence of guidance from Michigan courts, the Sixth Circuit determined that the statute of limitations contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) would apply. *See,* 679 F.2d at 99. ˙

**3.** In *Gallagher v. Chrysler Corp.,* the Sixth Circuit determined that the same statute of limitations should apply to both defendants in a § 301 action because of the inherent difficulties involved in applying multiple statutes of limitation, and because of the intimate relationship between the claims against the employer and those against the union. *See,* 613 F.2d at 168–169.

In the present case, Local 87 initially raised the statute of limitations as an affirmative defense in its answer, as is appropriate under the prevailing authority in this Circuit. *See, Pierce v. County of Oakland,* 652 F.2d 671, 672 (6th Cir.1981) (per curiam). In addition, Local 87 has specifically addressed the potential application of *Mitchell* and *Badon* in its most recent submission. *See,* doc. # 75, pp. 7–8. Thus, the issue properly before the Court is whether dismissal of the within action is mandated under *Badon* and *Mitchell* in view of the fact that Plaintiff's action was not filed within the time limits specified in Ohio Rev. Code Ann. § 2711.13 (Page Supp.1980).[4] Under *Badon,* the relevant inquiry is whether Inland's decision concerning Plaintiff's suspensions and discharge became "final through the operation of the collectively bargained-for private system of dispute resolution." *Badon,* 679 F.2d at 98.

The collective bargaining agreement in effect between Inland and Local 87 during the times pertinent herein established detailed procedures for the resolution of grievances. An employee who was discharged, for example, was given several options with respect to the method of filing a grievance regarding his discharge. Specifically, the agreement provided that:

> Any employee who has been disciplined by a layoff or a discharge may request the presence of a committeeman as outlined in the District Committeeman Section of this Agreement to discuss the case with him in an office designated by supervision before he is required to leave the plant.

*See,* Agreement between Inland Manufacturing Division, General Motors Corporation and Local Union No. 87, ¶ 64, pp. 85–86 (hereinafter referred to as Exhibit A).[5] It is further provided in the District Committeeman Section of the agreement that "[t]he term 'grievances filed' as used in this Agreement, shall also cover the 'calling of a committeeman' under the applicable terms of this agreement even though a written grievance does not result from such call." *Id.* at ¶ 15(f), p. 20. Thus, it is apparent that if a discharged employee requested the presence of a committeeman prior to the time he left the plant, he would be deemed, under the agreement, to have filed a grievance. In addition, the discharged employee was also permitted to file a written grievance on the date he was notified of his discharge. *Id.* at ¶ 31(d), p. 30.

If the discharged employee did not pursue his grievance prior to leaving the plant, he was afforded other opportunities to file a grievance, either by filing a complaint with the personnel department office in the plant area in which he last worked, or by presenting himself at the area of the plant in which, and on the shift he last worked. *See, id.* at ¶ 15(d)(1) and (3), p. 19. If this latter option was chosen, the agreement required the grievance to be handled on that shift by the committeeman who had been designated by the Union under ¶ 15(c) of the agreement. *Id.* at ¶ 15(d)(2).

*Regardless* of which method should be chosen by the employee to protest his discharge, ¶ 65 of the agreement placed a clear and definitive time restriction upon his ability to do so, by stating that:

> It is important that complaints regarding unjust or discriminatory layoffs or discharges be handled promptly according to

---

4. § 2711.13 provides in pertinent part that:

After an award in an arbitration proceeding is made, any party to the arbitration may file a motion in the Court of Common Pleas for an order vacating, modifying, or correcting the award. . . .

Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest.

5. The collective bargaining agreement in effect between Inland and Local 87 was originally filed with the final pretrial order as General Motors Exhibit A. *See,* doc. # 20(A), filed on June 24, 1976. Because Plaintiff has not disputed the fact that Exhibit A was the collective bargaining agreement under which the parties operated, the Court has made reference to it in ruling upon the pending motions. However, the Court will not enter final judgment in this action until such time as Defendant has filed a copy of the bargaining agreement, properly certified as dictated by Fed.R.Civ.P. 56(e).

the Grievance Procedure. *Such griev-ances must be filed within three (3) working days of the date of notification of the extent of the penalty layoff or of notification of discharge. The answer will be given within one (1) working day. If not satisfactorily settled, it may be appealed in line with Step Three of the Grievance Procedure.*

*Id.* at ¶ 65, p. 86. (emphasis added) The only conclusion which can be drawn from this provision is that if a grievance has not been filed within three working days of the employee's notification of discharge, the decision of the employer, i.e., to discharge the employee, is final, and no further appeal may be had under the collective bargaining agreement.

In the present case, Plaintiff Lamore was notified in writing of his discharge on October 5, 1972, but failed either to file a grievance or to contact a committeeman regarding his discharge. *See,* Lamore deposition, pp. 150, 153. Thus, not having filed within the time limits specified in ¶ 65, Lamore's right under the contract to contest his discharge lapsed, and the decision of General Motors, like that in *Badon,* became "final through the operation of the collectively bargained-for private system of dispute resolution." *Badon, supra,* 679 F.2d 93, 98 (6th Cir.1982).[6]

**6.** The same conclusion must be reached regarding Lamore's 1971 suspensions, which were referred to in the Fourth Count of the Complaint. Initially, it should be noted that it is questionable whether these matters may even be properly considered by the Court, given the Sixth Circuit's remand of this action only for further fact-finding with regard to whether it would have been futile for Lamore to have filed a grievance [with reference to his discharge]. *See, Appellate Order,* at p. 4. Specifically, the Court stated that:

The scope of the union's duty to this disabled member can only be determined by considering all the relevant facts surrounding his dismissal. These include evidence of the attitude of union leaders toward Lamore when they processed his prior grievances, and their knowledge of the events which resulted in his dismissal. This does not require the district court to predict what the union would have done had Lamore filed a grievance, but does require a finding of whether the union acted in bad faith, or indicated to Lamore that it would not adequately pursue his grievance. *Id.* at 4–5.

Based on the above statement, as well as upon the Sixth Circuit's use of the word "grievance" in its singular form, it appears that while evidence pertaining to the 1971 suspensions may be factually relevant, the only legal issue left open by the mandate is whether the union breached its duty of fair representation in connection with Lamore's dismissal, i.e., acted in such a manner that it would have been futile for Lamore to have attempted to file a grievance at the time of his discharge. This finding is further supported by the fact that in Lamore's Complaint, *see,* doc. # 1, and amendments to Complaint, *see,* doc. # 14, the suspensions are raised *only* in connection with Lamore's discharge, i.e., Lamore has alleged merely that the course of conduct engaged in by Inland and Local 87 that is, Inland's suspensions of Lamore, followed by the union's failure to contest said suspensions resulted in a situation which led to his discharge, to wit, one in which Inland could allegedly discharge Plaintiff with impunity, knowing the union would do nothing.

Assuming *arguendo,* however, that issues pertaining to the 1971 suspensions are still legally viable, several additional points are in order. First, as was noted by the Sixth Circuit, Lamore did not file a grievance with regard to any of the suspensions which occurred between June and September, 1971, or at least if he made any attempts, they were not within the time limits specified in ¶ 65 of the collective bargaining agreement for appeal of penalty lay-offs. *See, id.* at 2; *see also,* Ex. A, ¶ 65, p. 86; and Lamore deposition, pp. 41, 51, 58–60, 67, 75, 78–80, 84–86, 106, 109, and 136–137. Thus, as with Lamore's discharge, the failure to file a grievance within three days rendered the decision of Inland "final through the operation of the collectively bargained-for private system of dispute resolution." *Badon,* 679 F.2d at 98. Thus, by application of *Mitchell* and *Badon,* Lamore's claims based on the 1971 suspensions would be barred in view of the fact that the present action was not filed until almost four years after Inland's decisions became final.

On March 3, 1972, Lamore did attempt to file a grievance regarding the 1971 suspensions, but after the grievance was processed to the third step, the Shop Committee determined not to proceed further because the grievance was untimely under ¶¶ 65 and 45(a) of the collective bargaining agreement. *See,* Lamore deposition, pp. 136–137, and Lamore deposition ex. 18. Even if it could be considered that Inland's decision had not previously become final (a point about which the Court has no doubt), the failure to further appeal the March 3, 1972 grievance to the Third Step of the grievance procedure within the time limits set forth in ¶ 33 of the collective bargaining agreement, rendered the grievance in any event "settled on

There is an apparent conflict between *Badon* and the subsequent decision of the Sixth Circuit in *Newton v. Local 801 Frigidaire Local of the International Union of Electrical Workers,* 684 F.2d 401 (6th Cir. 1982) (*Newton*). In *Newton,* which was issued approximately two months after *Badon,* the Sixth Circuit affirmed this Court's application of the Ohio six year statute of limitations for actions based on liabilities created by statute to claims brought against a union for breach of its duty of fair representation. *See, id.* at 403. *See also, Newton v. Local 801 Frigidaire Local of the International Union of Electrical Workers,* 507 F.Supp. 439, 441–443 (S.D. Ohio 1981), *aff'd* 684 F.2d 401 (6th Cir.1982) (holding, prior to both *Mitchell* and *Badon,* that action was barred under Ohio Rev. Code Ann. § 2305.07). In *Newton,* the employee's grievance had been processed even farther than had the claim in *Badon,* i.e., to the highest level of appeal permitted. *See,* 684 F.2d at 402. Despite this fact, and despite the *Badon* Court's emphasis upon the importance of the private system of dispute resolution as a justification for applying *Mitchell* (and thus, the appropriate state statute of limitations for vacation of arbitration awards to unfair representation claims brought against a union), *Badon, supra,* 679 F.2d 93, 98 (6th Cir.1982), the Court in *Newton* elected to apply the state statute of limitations for actions based on liabilities created by statute, rather than the pertinent arbitration statute of limitations. *See,* 684 F.2d at 402–404.

One possible point of distinction between the two cases could be that the withdrawal of Newton's grievance may not have rendered his employer's decision "final" under the collective bargaining agreement. However, using this as a basis for distinguishing *Newton* appears unwarranted, since the *Newton* court did not at any point refer to such a distinction, and did not, in fact, even mention *Badon* except in a footnote, wherein it noted that Newton's claim would be barred either under the Ohio statute of limitations for actions based on liabilities created by statute, or under § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *See,* 684 F.2d at 403, n. 2.[7] Assuming however, that *Badon* and *Newton* may not be reconciled, or distinguished from each other, this Court is obliged, as are other panels of the Court of Appeals, to follow the decision in *Badon* (as the decision rendered first in point of time by the Sixth Circuit) until such time as it is departed from by the Sixth Circuit sitting *en banc. Timmreck v. United States,* 577 F.2d 372, 376, n. 15 (6th Cir.1978), *rev'd on other grounds,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). The law in other circuits is similar. *See, Ford v. General Motors Corp.,* 656 F.2d 117, 119–120 (5th Cir. 1981); *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981); *Hamilton v.*

the basis of the last decision and not subject to further appeal." Ex. A, ¶ 33, pp. 31–32. Thus, just as in *Badon,* the suspension decisions became final under the contract, and application of the limitations period contained in the Ohio statute providing for the vacation of arbitration awards would mandate dismissal of claims based on Lamore's 1971 suspensions.

7. There is some doubt about whether the reference to *Badon* in footnote 2 is entirely accurate, at least insofar as it can be read to suggest that under *Badon,* § 10(b) can be applied in lieu of an appropriate state statute on vacation of arbitration awards. Specifically, the Court in *Newton* stated that:

In *Badon v. General Motors Corp., ...* this Court suggested the application of the six-month *Federal* statute of limitations found in § 10(b) of the National Labor Relations Act .... Appellant's suit would be barred under

either the state statute relied upon in the instant case [i.e., Ohio Rev.Code Ann. § 2305.07] or the shorter Federal statute. 684 F.2d at 403, n. 2 (citation omitted) (parenthetical material added). While the Court in *Badon* did select the statute of limitations contained in § 10(b), it did so *only* after it had found that the Michigan State arbitration statute expressly excluded labor agreements, and only after it had concluded that Michigan had provided no other guidance regarding "the time period within which actions to vacate arbitration awards must be brought." *Badon,* 679 F.2d at 99. Thus, contrary to the inference in footnote 2, *Badon* does not furnish a predicate for applying § 10(b) in a case such as *Newton,* in which the pertinent state statute on vacation of arbitration awards does not exclude labor agreements, and thus, may appropriately be applied.

*Roth,* 624 F.2d 1204, 1209 (3d Cir.1980); and *Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638, 642 (4th Cir.1975).

■ Having concluded that *Badon* is applicable to the present action, the remaining issue which requires resolution in connection with the application of the statute of limitations is whether *Mitchell* and *Badon,* and, consequently, the statute of limitations contained in Ohio Rev.Code Ann. § 2711.13 (Page Supp.1980) should be applied retroactively to bar Plaintiff Lamore's lawsuit, which was not filed until almost three years after his discharge in October, 1972. The Sixth Circuit did not discuss the issue of retroactivity in *Badon,* probably because Badon's claim would have been barred anyway under the statute of limitations applied prior to *Mitchell. See, Badon, supra,* 679 F.2d 93, 97 (6th Cir.1982).

In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (*Chevron* ), the Supreme Court outlined the following factors to be considered in ruling upon the issue of retroactivity:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship by a holding of nonretroactivity."

*Id.* at 106–107, 92 S.Ct. at 355 (citations omitted).

In applying the first *Chevron* factor, "a court must compare the new limitations ruling with the law the plaintiff relied upon when he filed suit." *Wachovia Bank and Trust Co. v. National Student Marketing Corp.,* 650 F.2d 342, 347–348 (D.C.Cir.1980), *cert. denied,* 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981). *Accord, Kennard v. United Parcel Service, Inc.,* 531 F.Supp. 1139, 1143, n. 10 (E.D.Mich.1982). Accordingly, in order to assess whether *Mitchell* or *Badon* overruled clear past precedent upon which Plaintiff may have relied, resort must be had to the state of the law as it existed in 1975, when Plaintiff instituted the present action. This Court has been unable to find a decision involving claims based on the union's breach of the duty of fair representation wherein the applicable Ohio statute of limitations was specifically selected.[8] However, in *Gray v. International Association of Heat and Frost Insulators and Asbestos Workers, Local No. 51,* 416 F.2d 313 (6th Cir.1969), the Sixth Circuit did consider which Kentucky statute of limitations should be applied to a claim premised on breach of the duty of fair representation. *See, id.* at 316. Based on *Hoosier Cardinal,* which required "reference to the appropriate state limitation on similar suits," *id.,* the Sixth Circuit determined that the Kentucky statute of limitations for actions based on liabilities created by statute would be applicable. *Id.* In addition, although there is no available 1975 authority regarding the Ohio statute of limitations applicable to unfair representation claims, Sixth Circuit decisions rendered prior to *Mitchell* did apply Ohio Rev.Code Ann. § 2305.07, i.e., the Ohio limitations statute for actions premised upon liabilities created by statute, to various other claims based on federal statutes. *See, e.g., Englander Motors, Inc. v. Ford*

---

8. In 1980, this Court did determine that under *Hoosier Cardinal, supra,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Ohio statute of limitations for actions based on liabilities created by statute should be applied to claims based on a union's breach of its duty of fair representation. *See, Newton v. Local 801 (Frigidaire*

*Local of the International Union of Electrical Workers),* 507 F.Supp. 439, 441–442 (S.D.Ohio 1980), *aff'd* 684 F.2d 401 (6th Cir.1982). That decision, of course, has no real bearing on the point presently under consideration, since it was issued five years after the filing of Plaintiff's lawsuit.

*Motor Co.,* 293 F.2d 802, 806–807 (6th Cir. 1961) (applying § 2305.07 in action brought under federal antitrust laws); *City Messenger Service v. Capitol Records Distributing Corp.,* 446 F.2d 6 (6th Cir.1971), *cert. denied,* 404 U.S. 1059, 92 S.Ct. 738, 30 L.Ed.2d 746 (1972) (holding § 2305.07 applicable in tariff action initiated pursuant to 49 U.S.C. § 1373(b)); and *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520, 522 (6th Cir.1975). Although it could be questioned whether the above authority constituted *clear* precedent, it does appear that an analysis of the law in 1975 would have indicated that an action against a union for breach of its statutory duty of fair representation would have been governed by the six year limitations period contained in § 2305.07. Accordingly, a litigant could reasonably have concluded that his action against a union would be timely if filed within six years of the alleged breach.

More to the point, it appears that *Mitchell,* and *Badon* in its extension of *Mitchell,* addressed issues of first impression, the resolution of which were not clearly foreshadowed, particularly in 1975. In *Hoosier Cardinal, supra,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Supreme Court specifically stated that:

> The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law. *Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide and we indicate no view whatsoever on that question.*

*Id.* at 705, n. 7, 86 S.Ct. at 1113, n. 7 (emphasis added). Because *Hoosier Cardinal* involved an action under § 301 by a union against an employer, *see, id.* at 699, 86 S.Ct. at 1109, the Court did not consider what type of limitations period would be applicable in actions such as *Mitchell* and *Badon,* which involved not only a breach of the collective bargaining agreement, but also involved issues related to the union's duty of fair representation. In addition, there is no indication in either the Supreme Court opinion or the lower court decisions in *Hoosier Cardinal,* that the grievance or arbitration processes were ever invoked or involved. *See, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW v. Hoosier Cardinal Corp.,* 235 F.Supp. 183 (S.D. Ind.1964), *aff'd.* 346 F.2d 242 (7th Cir.1965), *aff'd* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Thus, the issues addressed in *Mitchell* and *Badon* were matters of first impression, and the existence of the above authority, i.e., the decisions of the Sixth Circuit which applied certain statutes of limitation to statutorily based claims, negates any inference that *Mitchell* and *Badon* were clearly foreshadowed. Consequently, the Court concludes that the first *Chevron* factor has been satisfied, that is, that *Mitchell* and *Badon* either overruled past clear precedent upon which Plaintiff may have relied, or addressed matters of first impression which were not distinctly foreshadowed.

It should be emphasized that " 'all three of the factors listed in *Chevron Oil* must be shown to favor prospective-only application before a decision will be denied retroactive effect.' " *Cochran v. Birkel,* 651 F.2d 1219, 1223, n. 8 (6th Cir.1981), *cert. denied,* 454 U.S. 1152, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982), quoting from *Valencia v. Anderson Brothers Ford,* 617 F.2d 1278, 1288–1289 (7th Cir.1980), *rev'd on other grounds* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).[9] Thus, in order to preclude the retroactive application of *Mitchell* and *Badon,*

---

**9.** The Sixth Circuit also indicated in *Cochran v. Birkel* that " '[b]ecause prospective-only application is the exception rather than the rule, the party seeking to invoke *Chevron Oil* bears the burden of providing that such limited application is justified.' " 651 F.2d at 1223, n. 8, quoting from 617 F.2d at 1288–1289. In the present case, since Plaintiff has not filed any response either to Local 87's motion for summary judgment or to the Court's request for further briefing, it would be difficult to conclude that Plaintiff has met his burden, or, in fact, that he has even attempted to invoke the application herein of *Chevron Oil.*

both of the remaining *Chevron* criteria must be satisfied. Under the circumstances of the present case, however, such a showing cannot be made. As was previously noted, the second consideration under *Chevron* is the effect of retroactive application upon the operation of the rule in question. Because of the *Mitchell* court's concern that a protracted limitations period would render the collective bargaining system unworkable, *see, Mitchell, supra,* 451 U.S. 56, 63–64, 101 S.Ct. 1559, 1564–65 (1981), other courts in this circuit have held that retroactive application of *Mitchell* will, in fact, "achieve the precise effect that was intended by the Supreme Court." *Kikos v. International Brotherhood of Teamsters,* 526 F.Supp. 110, 115 (E.D.Mich.1981). *See also, McCoy v. Truck Drivers, Local Union No. 100,* 526 F.Supp. 1256, 1259 (S.D.Ohio 1981) (*McCoy*) (applying *Mitchell* retrospectively based on "policy considerations articulated [therein] by the Supreme Court").[10] Moreover, this Court in a recently issued decision, determined that the goals outlined in *Mitchell* would be heightened by retroactive application. *See, Hudson v. Teamsters Local Union No. 957,* 536 F.Supp. 1138, 1144 (S.D.Ohio 1982).

Finally, under the third *Chevron* consideration, the Court finds that it would not be inequitable to apply *Mitchell* retroactively. As was noted by the Court in *McCoy,* the Supreme Court in *Mitchell* did not hesitate to apply the three-month statute of limitations for vacation of arbitration awards *despite* the fact that the parties could not have been aware of an obligation to institute suit within that period of time. *See,* 526 F.Supp. at 1259. *See also, Kikos v. International Brotherhood of Teamsters,* 526 F.Supp. at 115–116. Although this approach has been criticized as having the potential to emasculate the *Chevron* doctrine, *see, Kennard v. United Parcel Service, Inc.,* 531 F.Supp. at 1147, n. 18, it is difficult to discount the fact that " '[s]ince the Supreme Court is well aware of how to avoid the effects of applying one of its rulings retroactively,' ... the declination to do so in *Mitchell, supra,* suggests that the Supreme Court intended its decision to be applied retroactively in most circumstances." 526 F.Supp. at 115–116 (citations omitted). Thus, because two of the criteria required for non-retroactivity under *Chevron* have not been satisfied herein, the Court concludes that there is no barrier to the retroactive application of *Mitchell* and *Badon* to the present case[11]. Accordingly,

10. In *Kennard v. United Parcel Service, Inc.,* 531 F.Supp. 1139 (E.D.Mich.1982), the Court did determine, under the facts of that case, that *Mitchell* should not be applied retroactively. Although the Court recognized *Mitchell's* emphasis on "speedy resort to the courts," it concluded that since the plaintiff *had* made quick resort, i.e. he had filed suit within the ninety day period utilized in *Mitchell* but not within the twenty day period deemed appropriate after *Mitchell* under Michigan law, retroactive application would not advance the purpose of the rule articulated in *Mitchell. Id.* at 1141, 1146–1147. No such consideration exists herein, since Plaintiff did not file suit within the time period specified in *Mitchell,* but to the contrary, waited almost three years after his discharge, and almost four years after his 1971 suspensions to file the present action.

11. As a practical matter, there is an additional reason why it would not be inequitable to apply *Mitchell* and *Badon* to the present action. In its Order of May 28, 1981, the Sixth Circuit affirmed the dismissal of Plaintiff's former employer, Inland, as a party defendant. Specifically, the Court stated that "[t]he district court

properly dismissed the action against Inland. The evidence of insubordination was good cause for Lamore's discharge." Appellate Order, p. 5. The Order then remanded the case for additional fact-finding with regard to whether, given the union's past conduct, it would have been futile for Lamore to have filed a grievance because of the attitudes of the union leaders. The Sixth Circuit has indicated that "when a case has been remanded, the trial court must upon the remand proceed in accordance with the mandate and law of the case as established by the appellate court." *In re United States Steel Corp.,* 479 F.2d 489, 493 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973). Moreover, this duty of compliance extends to "everything decided, either expressly or by necessary implication." *Munro v. Post,* 102 F.2d 686, 688 (2d Cir.1939). *Accord, Lehrman v. Gulf Oil Corp.,* 500 F.2d 659, 663 (5th Cir.1974), *cert. denied,* 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975).

The only implication which can be drawn from the Sixth Circuit's affirmance of the dismissal of Lamore's action against Inland, as well as from the limitation upon the factual

because Plaintiff's action was not filed within the time limits specified in Ohio Rev. Code Ann. § 2711.13, all claims against the remaining Defendant, Local 87 must be, and hereby are dismissed [12].

## III. CONCLUSION

■ Based on the preceding analysis, the Court finds that the present action against Defendant Local 87 must be dismissed by virtue of the application of the statute of limitations period contained in Ohio Rev. Code Ann. § 2711.13. Final judgment will be entered by the Clerk of Courts' Office, in favor of the Defendant, after such time as the Defendant has filed with this Court a copy of the applicable collective bargaining agreement, properly certified pursuant to

inquiry to be conducted herein, *see* footnote 3, *supra,* is that the Sixth Circuit did not view the 1971 suspensions as having violated the collective bargaining agreement, and that if those matters were at all relevant, they were only pertinent as part of the factual background surrounding the union's alleged breach of duty in failing to file a grievance regarding Lamore's discharge. In addition, given the dismissal of Inland as a defendant and the Court's observation that the discharge was for good cause, it can only be inferred that Lamore's discharge was not violative of the collective bargaining agreement.

Given the above set of affairs, it is highly questionable whether Lamore has *any* potential to recover against the union, even if he can establish that his claims are not barred under the exhaustion doctrine. In *Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), the Supreme Court indicated that "[t]o prevail against either the Company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *Id.* at 570–571, 96 S.Ct. at 1059. Since Plaintiff cannot establish that his discharge was, in fact, contrary to the terms of the collective bargaining agreement, he will not be able to establish the necessary predicate for recovery in this § 301 action. Thus, as was noted by the Sixth Circuit in *St. Clair v. Local Union No. 515 of the International Brotherhood of Teamsters,* 422 F.2d 128 (6th Cir.1969), "if the company did not act wrongfully in firing . . . [the employee], then clearly the union owes him no damages, since even if its duty had been fully discharged, . . . [the employee] would not have retained his job." *Id.* at 132 (parenthetical material added).

Even if claims based on the 1971 suspensions could somehow still be deemed legally relevant after the Sixth Circuit order, it would be extremely unlikely that Plaintiff would be entitled to recover any damages from the union for any breach of its duty of fair representation in connection with the 1971 suspensions. In *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court established the apportionment principle, and indicated that "damages attributable solely to the employer's breach of contract should not be charged to the union but increases if any in those damages

caused by the union's refusal to process the grievance should not be charged to the employer." *Id.* at 197–198, 87 S.Ct. at 920–921. Although it has been recognized that in cases such as the present, "the increment of damages caused by the union's breach of duty is virtually *de minimis,"* *Milstead v. International Brotherhood of Teamsters, Local Union No. 957,* 649 F.2d 395, 396 (6th Cir.), *cert. denied,* 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981), the union could be held liable for such damages as attorney fees, travel expenses and other incidental expenses. *See, Badon, supra,* 679 F.2d 93, 98 (6th Cir.1982). There has been no indication that the union was in any way responsible either for Plaintiff's 1971 suspensions, or for any delay in processing a grievance regarding those suspensions. *See,* footnote 3, *supra.* Consequently, it is apparent that the union would not be liable for any increase in lost wages resulting from the 1971 suspensions. Moreover, assuming *arguendo* that Plaintiff could somehow establish that the union breached its duty of fair representation in connection with the 1971 suspensions, it is questionable whether he could recover attorney fees, since he is a *pro se* litigant and has thus apparently incurred no such fees.

Based on the preceding analysis, it is apparent that Plaintiff will be unable to recover damages against the union for claims based on his discharge from Inland, and if any other claims have retained legal vitality, Plaintiff will be entitled at best to recover only incidental costs such as court costs. Consequently, even if the reasons cited in the main text had not furnished a basis for applying *Mitchell* and *Badon* retroactively, the circumstances outlined above clearly indicate that retrospective application is not inequitable.

12. In view of the disposition of this case on the basis of Plaintiff's failure to comply with the statute of limitations set forth in § 2711.13, the Court does not reach those additional issues raised in Local 87's motion for summary judgment. In particular, the Court has not addressed Local 87's contention that the record as it stands indicates that it would not have been futile for Plaintiff to have filed a grievance after his discharge. Such a ruling, in the context of Local 87's motion, would violate the mandate issued by the Sixth Circuit.

**1016**

Fed.R.Civ.P. 56(e), which must be done within seven (7) days from date of receipt of this Decision and Entry. See Footnote 2, *supra.*

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.