Henry M. BADON and Jessie B. Badon, Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION, and Local 659 and the International United Automobile, Aerospace, Agricultural Workers of America, Defendants-Appellees.

No. 80–1730.

United States Court of Appeals, Sixth Circuit.

Argued March 4, 1982.

Decided May 25, 1982.

David Melkus, Flint, Mich., for plaintiffs-appellants.

David M. Davis, Marley Weiss, Daniel G. Galant, Alan V. Reuther, Detroit, Mich., for defendants-appellees.

Before MARTIN, Circuit Judge, PECK, Senior Circuit Judge, and PORTER, Senior District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

We have before us an interesting question involving the timeliness of Henry Badon's claims against his former employer, General Motors Corporation and his union, the United Auto Workers. In his complaint he invoked the jurisdiction of the District Court under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging that General Motors wrongfully denied him pension benefits provided by the national agreement between General Motors and the United Auto Workers. As against the union, Badon contended that it violated his rights under section 301 by failing to represent him fairly in the processing of his pension claim against the company. *See Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In addition, Badon attached a pendent state law claim against General Motors asking the court to employ its equitable powers and void the settlement of his worker's compensation claim. He charged that General Motors fraudulently induced him to agree to a settlement which the company knew would result in the loss of his disability pension.

Badon's disability stemmed from an on-the-job injury suffered in December, 1970. On October 26, 1971, he settled his worker's compensation claim with the company after a redemption hearing before a state referee. *See* M.C.L.A. § 418.837, M.S.A. § 17.-237(837). The agreement stipulated that Badon would voluntarily quit his job. Previously, Badon had filed a claim with the company for a total and permanent disability pension. That claim was pending during the hearing on the settlement of his work-

men's compensation claim. On December 3, 1971, General Motors notified Badon that his pension claim was denied. The company found the medical evidence insufficient to support the application. Thereafter the union had thirty days in which to appeal the denial on Badon's behalf. No appeal was taken and General Motors' decision became final and binding on all parties pursuant to the terms of the national contract. Ordinarily, the employee himself could then file a renewed application, but because Badon had resigned his position in the settlement of his worker's compensation claim, this avenue was foreclosed. Thus all his internal remedies against the company were lost.

Almost six years later, on October 31, 1977, Badon instituted this action. Both defendants moved for summary judgment on the section 301 claims on the ground that they were time barred. The District Court agreed and borrowed Michigan's three-year tort statute of limitations to grant the motions. M.C.L.A. § 600.5805(7), M.S.A. § 27A.5805(7). The court used the Michigan statute because the Labor Management Relations Act contains no statute of limitations.

In *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966), the Supreme Court held that federal courts should apply the most analogous state statute to section 301 suits as a matter of federal law. This court has consistently held that Michigan's tort statute governs the timeliness of section 301 actions. *Echols v. Chrysler Corporation*, 633 F.2d 722 (6th Cir. 1980); *Gallagher v. Chrysler Corporation*, 613 F.2d 167 (6th Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980); *Smart v. Ellis Trucking Co.*, 580 F.2d 215 (6th Cir.), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1978). Nevertheless, Badon argues that the District Court should have distinguished those authorities and applied Michigan's six-year contract statute of limitations. M.C.L.A.

---

* Honorable David S. Porter, Senior District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

§ 600.5807, M.S.A. § 27A.5807. He contends that because his claim involves a wrongful denial of pension benefits, *Smart* and its progeny, which disposed of wrongful discharge claims, are not relevant. This reasoning ignores the fact that *Echols* barred a section 301 pension claim as untimely under the tort statute.

The District Court also granted General Motors' motion for summary judgment on the fraud claim. Absent some duty imposed by state law requiring the company to inform Badon of all the possible consequences of his worker's compensation settlement, the court found no set of facts alleged in the pleadings, or appearing in the documents filed, which could support a claim of fraud. The redemption hearing record revealed no misrepresentations by the company. In fact, the relationship between the redemption process and the pending pension claim was discussed and Badon was, quite correctly, told that the two were independent. The District Court searched Michigan law for some obligation on the part of General Motors to inform Badon or his counsel that should the company deny the pension application and should Badon agree to resign his employment in the course of settling the worker's compensation claim, he would be left without recourse against the company if the union failed to appeal the pension denial. The court found no such affirmative duty owing to Badon. *See Williams v. Benson*, 3 Mich. App. 9, 141 N.W.2d 650 (1966).

We find that summary judgment was properly entered in favor of General Motors on the fraud claim. The events which operated to deny Badon his pension, i.e. the company's adverse decision and the union's failure to appeal, had not yet occurred at the time of the workmen's compensation hearing and were not completely within General Motors' control. Badon was at all times represented by counsel and has offered no proof of any misrepresentation by the company. Furthermore, the parties were not, as Badon suggests, laboring under

any mutual mistake of fact. Any mistake regarding the possible consequences of the redemption was unilateral on Badon's part. In the context of the settlement, General Motors owed no fiduciary or other duty to Badon. *Williams v. Benson, supra.* Absent such a duty, Badon can allege no facts sufficient to support his claim of fraud. We turn now to the more difficult statute of limitations question.

After the initial briefs were filed but prior to oral argument and the filing of appellant's reply brief, the Supreme Court in *United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) addressed the question before us: What state statute of limitations should be applied by federal courts to hybrid section 301–unfair representation actions? Expanding upon the rationale of *Hoosier Cardinal, supra*, the Court held that the most appropriate state statute was that pertaining to the vacation of arbitration awards. 451 U.S. at 62, 101 S.Ct. at 1563. Like the present case, *Mitchell* involved a section 301 suit by an employee against both his employer and union. The District Court employed New York's ninety-day arbitration statute [1] and dismissed the wrongful discharge claim as untimely. On appeal, the Second Circuit reversed and applied its rule that section 301 actions were to be governed by New York's six-year contract statute.[2] *See Abrams v. Carrier Corp.*, 434 F.2d 1234 (2d Cir. 1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). Thereafter the employer alone appealed and the Supreme Court, through its analysis of the special nature of section 301 actions, rejected the position of the Second Circuit and reinstated the trial court's dismissal.

In *Mitchell*, use of the contract statute was inappropriate because, in the Court's opinion, section 301 suits are a matter of federal labor law. All section 301 actions hinge on allegations of breach of a

---

1. N.Y.Civ.Prac.Law and Rules § 7511(a) (McKinney).

2. N.Y.Civ.Prac.Law and Rules § 213(2) (McKinney).

collectively bargained contract.[3] Even though the plaintiff-employee's claim against the employer—wrongful discharge, denial of pension benefits, etc.—arises out of the employment contract, the merits of that claim will not be heard unless the employee successfully challenges the finality accorded the employer's decision. That finality stems from the fact that the decision against the employee will have been reached pursuant to a contractually established union-management dispute resolution process, the results of which are binding on all parties to the contract, including the employee. Circumventing that finality requires an attack on the fairness of the decision-making process. *Mitchell*, 451 U.S. at 61–62, 101 S.Ct. at 1563. *See also Vaca v. Sipes, supra.* This is the substance of an unfair representation claim against a union,[4] an action which the Court characterized as "more a creature of 'labor law' as it has developed since the enactment of section 301 than it is of general contract law." *Id.* 451 U.S. at 63, 101 S.Ct. at 1564. Because the effect of a decision for the employee in *Mitchell* would have been the vacating of an arbitration award won by the employer pursuant to the terms of the employment contract, the Court felt that the state statute governing such actions provided the most appropriate time limitations under *Hoosier Cardinal*. *Id.* 451 U.S. at 62, 101 S.Ct. at 1563. Initially we must consider whether *Mitchell* controls here, or whether, as Badon suggests, it is inapposite because, unlike the employee's claim in *Mitchell*, Badon's pension dispute was never submitted to arbitration or heard by any impartial panel. Furthermore, we note at this juncture that even if *Mitchell* is disregarded altogether, we would find Badon's claim time-barred because we are not persuaded that his case should be distinguished from the prior rule of *Smart, supra,* that Michigan's three-year tort statute applies to section 301 actions.

Perhaps the most vital part of the analysis in *Mitchell* was the Court's recognition that section 301 claims are neither standard contract nor standard tort actions. Instead, such suits are fundamentally tied to the federal statutes governing labor-management relations. As Justice Stewart notes in his concurrence, the section 301 claim in *Mitchell* was not a straightforward damage claim under the Labor Management Relations Act because that statute would not be available to an individual employee absent the duty of fair representation imposed upon his union by the National Labor Relations Act. *Id.* 451 U.S. at 66–68, 101 S.Ct. at 1565–1567. *See* note 4, *supra.*

The purpose of an employee's section 301 lawsuit, which in reality is a hybrid action involving both the Labor Management Relations Act and the National Labor Relations Act, is to set aside a final and binding decision reached pursuant to the terms of a collectively bargained agreement. Again, although the underlying claim looks to a violation of the employment contract, the focus in the first instance challenges the process by which a labor dispute was privately settled. Unlike most commercial contracts, large scale collective bargaining agreements must establish a grievance resolution process in order to insure a smoothly functioning labor-management relationship. Efficiency is a fundamental concern. The parties bargain for and devise a private system of adjudication, in part to avoid the expense and delay of the public system. Yet the public system, as this action suggests, remains close at hand in order to protect the employee's right to be heard by a process that is fundamentally fair. This is our primary concern. The substance of the section 301 claim will be heard in federal court only if the internal dispute resolution process has broken down. Otherwise the interests of the employer and union in an efficient grievance resolution system are paramount.

---

**3.** *See* 29 U.S.C. § 185(a).

**4.** "The duty of fair representation is . . . implicit in the National Labor Relations Act, 49 Stat. 449, as amended, 29 U.S.C. §§ 151 et seq." *Electrical Workers v. Foust,* 442 U.S. 42, 46 n.8, 99 S.Ct. 2121, 2125 n.8, 60 L.Ed.2d 698 (1979). *See also Mitchell, supra,* 451 U.S. at 66 n.2, 101 S.Ct. at 1562 n.2 (Stewart, J., concurring in the judgment).

In its majority opinion, the *Mitchell* court repeatedly stressed the importance of protecting the integrity of internally resolved disputes by according them absolute finality through the imposition of relatively short state statutes of limitations. *Id.* 451 U.S. at 61–64, 101 S.Ct. at 1563–1565. The New York arbitration statute was appropriate not only because the effect of a decision for the employer would have been to vacate an arbitration award, but also because arbitration, like a grievance resolution system, is a private method of resolving disputes.

■ Unlike Badon's complaint, Mitchell's grievance had been submitted to arbitration. We do not, however, feel that this difference distinguishes the underlying rationale of *Mitchell.* Where the parties have contracted to settle claims among themselves, their final decisions should not be exposed to collateral attack for long periods but should become final rather quickly. *See U.M.W. v. Barnes & Tucker Co.,* 561 F.2d 1093, 1096 (3d Cir. 1977) ("It is not arbitration *per se* that federal policy favors, but rather final adjustment of differences by a means selected by the parties."). Otherwise, the internal system will be just another step in a lengthy process of litigation rather than an efficient and unitary method of disposing of the high volume of grievances generated under any large scale employment contract.

■ Accordingly, where an employer's decision has become final through the operation of the collectively bargained-for private system of dispute resolution, the rule of *Mitchell* applies and the state statute of limitations pertaining to the vacation of arbitration awards will be utilized in subsequent federal court proceedings. This rule applies to Badon's claim against General Motors. Although that claim was never heard by an impartial panel because of the union's failure to appeal it, the dispute was resolved and became final according to the contractually established resolution process. The *Mitchell* rule also applies to Badon's unfair representation claim against the United Auto Workers. Although certain distinctions can be drawn between the separate section 301 claims against the company and the union, *see Mitchell, supra,* 451 U.S. at 72–75, 101 S.Ct. at 1569–1570 (Stevens, J., concurring in part, dissenting in part), we feel the better rule applies the same statute of limitations to both parties. *See Gallagher, supra,* 613 F.2d at 167–68. Application of a single statute of limitations is also supported by the fact that damages against the union would be limited to attorneys fees, court costs, travel expenses and other costs incidental to plaintiffs' attempts to recover. Lost wages, lost benefits, and punitive damages are not recoverable against a union in an unfair representation action pursuant to section 301. *Milstead v. Teamsters Local 957,* 649 F.2d 395 (6th Cir.), *cert. denied,* 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). It would be contrary to sound judicial policy to encourage actions to recover only the costs of litigation where no underlying right can any longer be vindicated in the action.

Having decided that *Mitchell* controls the facts of this case, we must next apply the Michigan statute of limitations regulating the vacation of arbitration awards. In Michigan, the relevant limitations period is found, not in a statute, but in Court Rule GCR 1981, 769.9(2), which applies a twenty-day period to motions to vacate arbitration awards. This rule, however, controls only "statutory arbitration under RJA (Revised Judicature Act) Chapter 50." GCR 1981, 769.1. Chapter 50 of the RJA in turn expressly provides: "The provisions of this chapter *shall not* apply to collective contracts between employers and employees or associations of employees in respect to terms or conditions of employment." M.C. L.A. § 600.5001(3), M.S.A. § 27A.5001(3) (emphasis added).

*Mitchell* requires us to honor Michigan's decision to exclude labor arbitration from the otherwise relevant twenty-day period. The majority opinion spoke directly to this circumstance when it noted: "Obviously, if New York had adopted a specific six-year statute of limitations for employer challenges to awards of a Joint Panel, or similar body, we would be bound to apply that

statute under the reasoning of *Hoosier Cardinal*." 451 U.S. at 64, 101 S.Ct. at 1564. Although Michigan, by excluding labor disputes from the arbitration statute, has accomplished the converse of the Court's hypothetical, its principle nevertheless applies here. The state has enunciated a clear policy relating labor disputes to the vacation of arbitration awards and this court, under the combined effect of *Hoosier Cardinal* and *Mitchell* is bound by that decision.

By excluding labor disputes from statutory arbitration, Michigan has relegated labor arbitration to the realm of the common law. Appellants have not directed us to, nor have we found, any authority limiting the time in which labor arbitration awards may be vacated in Michigan. Badon has, however, cited several cases which he claims employ Michigan's residual six-year personal action statute. M.C.L.A. § 600.5813, M.S.A. § 27A.5813. Unfortunately none of the cases cited is apposite. In *Teamsters Local 214 v. Board of Commissioners*, 77 Mich.App. 296, 258 N.W.2d 209 (1977), the Court of Appeals relied on its general appellate powers to remand a labor arbitrator's award, noting the unavailability of Court Rule 769 because of the prohibition discussed above. *Id.* 258 N.W.2d at 212 fn. 6. No statements concerning the appropriate statute of limitations appear in the opinion. Similarly, in *Lanting v. Jenison Public Schools*, 103 Mich. App. 165, 302 N.W.2d 631 (1981), the court did not discuss this issue. Badon correctly points out that Judge Kennedy in *Marshall v. Chrysler Corp.*, 378 F.Supp. 94 (E.D.Mich. 1974), parenthetically listed claims subject to arbitration as one example among several to which the residual six-year statute applies. *Id.* at 97. Yet we do not find this dicta persuasive. The example does not relate to labor arbitration and is not documented beyond its very brief parenthetical notation.

In summary, we are left without guidance by the state of Michigan with respect to the time period within which actions to vacate labor arbitration awards must be brought. We must therefore decide this federal question on the strength of our own reasoning. That process leads us to conclude that the most appropriate statute of limitations under these circumstances is the six-month period found at section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Although that period specifically governs unfair labor charges brought before the National Labor Relations Board, the policy behind that time period applies with equal force when similar charges are brought to a federal court under section 301 of the L.M.R.A. Justice Stewart adopted this position in his concurrence to *Mitchell*. Of the section 10(b) limitations period and its relevance to section 301 actions he said:

> In § 10(b) the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationship and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system. That is precisely the balance at issue in this case. The employee's interest in setting aside the "final and binding" determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates "those consensual processes that federal labor law is chiefly designed to promote—the formation of the agreement and the private settlement of disputes under it." *Hoosier*, 383 U.S. [696] at 702 [86 S.Ct. 1107, at 1111, 16 L.Ed.2d 192]. Accordingly, "[t]he need for uniformity" among procedures followed for similar claims, *ibid.*, as well as the clear congressional indication of the proper balance between the interests at stake, counsels the adoption of § 10(b) of the NLRA as the appropriate limitations period for lawsuits such as this.

*Mitchell, supra*, 451 U.S. at 70–71, 101 S.Ct. at 1568.

Beyond the relevance of section 10(b) as a limitations period operating in the context of labor disputes lies the fact that in hybrid

section 301 suits, such as Badon's, the predicate to proceeding with the contract claim against the employer is proof of the unfair representation claim against the union. As noted earlier, the union's duty of fair representation springs from the National Labor Relations Act. In essence, it is this duty, or more precisely its breach, which opens the door to section 301 of the Labor Management Relations Act to the claims of unionized employees. Hence it is not inappropriate to look to the limitations period contained in that statute, the National Labor Relations Act, when adjudging the timeliness of section 301 hybrid actions.

When we apply section 10(b)'s six-month limitations period to the present case, we find Badon's section 301 claims against General Motors and the United Auto Workers time barred. We also deny appellants' untimely motion to set aside the judgment of the District Court on the state law fraud question.

Judgment affirmed.