**Mike EDIE, Plaintiff,**

v.

**The BRUNDAGE COMPANY, Defendant.**

**No. K80–501 CA.**

United States District Court, W. D. Michigan, S. D.

Sept. 10, 1982.

Gregory R. Bosma, Kalamazoo, Mich., for plaintiff.

Brian Clemow, Hartford, Conn., for defendant; Edward R. Freeberg, Kalamazoo, Mich., of counsel.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This action is brought pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. Plaintiff alleges that defendant Brundage Company, his former employer, breached their collective bargaining agreement (CBA) by improperly terminating his employment. Plaintiff also charged his union, United Steelworkers of America, AFL–CIO, with breach of its duty of fair representation.[1] Now before this Court are defendant's motion for summary judgment; defendant contends that the Sixth Circuit's recent decision in *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir. 1982) requires dismissal of this action because of a statute of limitations bar.

Plaintiff Edie was suspended from work on October 23, 1979, a hearing was held on October 29, 1979, and the suspension was converted to a discharge. There is some factual discrepancy about whether or not plaintiff requested that a grievance be filed on his behalf, but it is undisputed that a grievance was not filed, and the Company's dismissal action therefore became a final decision under the CBA on or about November 1, 1979. Plaintiff filed his complaint in this action on June 23, 1980, nearly 8 months after his discharge.

On April 20, 1981, the United States Supreme Court announced its decision in *United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), holding that in § 301 actions the appropriate state statute of limitations was that governing the vacation of arbitration awards rather than a longer period for bringing suit for breach of contract. *See International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–1113, 16 L.Ed.2d 192 (1966). The shorter period was deemed more appropriate primarily because of federal labor policies favoring "the 'relatively rapid disposition of labor disputes.'" 451 U.S. at 63, 101 S.Ct. at 1564. There was, however, some

---

1. The union has settled with plaintiff and is therefore no longer a party in this action.

support for the proposition that the six-month statute of limitations provided for in § 10(b) of the NLRA, 29 U.S.C. § 160(b), should apply because the action in *Mitchell* was a hybrid § 301—breach of duty suit. 451 U.S. at 65–71, 101 S.Ct. at 1565–1568 (Stewart, J., concurring in the judgment). *Cf. Vaca v. Sipes,* 386 U.S. 171, 197 n. 18, 87 S.Ct. 903, 920 n. 18, 17 L.Ed.2d 842 (1967) (discussing the concept of a "hybrid" action).

On May 25 of this year, the Sixth Circuit announced its decision in *Badon.* Applying the *Mitchell* reasoning, and citing Justice Stewart's analysis, the Court decided that in hybrid § 301—fair representation suits brought in Michigan, the six-month statute of limitations in § 10(b) applied. In so doing, the Court determined that the 20-day period called for by Michigan GCR 769.9(2) was not appropriate [2] nor was the previously applied three-year tort statute of limitations in M.C.L.A. § 600.5805(7).[3]

▮▮▮ The standards for determining whether a new judicial decision should be given non-retroactive effect were set out in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). These standards are:

First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed .... Second, it

has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity."

404 U.S. at 106–107, 92 S.Ct. at 355 (citations omitted). Because retroactivity is the rule, and non-retroactivity the exception, the party seeking non-retroactive application bears the burden of persuading the Court that non-retroactivity is justified and must show that all three factors in *Chevron Oil* favor non-retroactivity. *Cochran v. Birkel,* 651 F.2d 1219, 1223 n. 8 (6th Cir. 1981). This is a difficult burden to meet, and plaintiff has failed to meet it in this case.

It is obvious that *Badon* overruled clear past precedent. *See Echols v. Chrysler Corp.,* 633 F.2d 722 (6th Cir. 1980); *Gallagher v. Chrysler Corp.,* 613 F.2d 167 (6th Cir. 1980); *Smart v. Ellis Trucking Co.,* 580 F.2d 215 (6th Cir. 1978). The Sixth Circuit pointed this out in *Badon.* 679 F.2d at 95.

For this reason, it also seems inequitable to apply *Badon* retroactively.[4] At the time when the cause of action arose,[5] the three-

---

**2.** GCR 769.9(2) was held to be inappropriate because it expressly excludes from its coverage arbitration pursuant to collective bargaining agreements. *See* M.C.L.A. § 600.5001(3).

**3.** Although, as the Court stated, prior to this time it had "consistently held that Michigan's tort statute governs the timeliness of section 301 actions." 679 F.2d at 95.

**4.** The Court does note, however, that the grievance procedures which ultimately lead to this type of lawsuit involve very short periods of time within which to move on to the next step in the procedure. For instance, the contract between Brundage and the United Steelworkers, upon which this claim is based, required employees to request a hearing on discharges within five (5) days, and allowed three (3) days

thereafter in which to file a grievance. Insofar as a court challenge of an arbitrator's decision can be considered as another step in the grievance procedure it is not unfair to require an employee to file the lawsuit very shortly after the arbitration procedure is finalized.

**5.** In *Badon,* the Sixth Circuit held that a grievance has proceeded to a "final decision," and the cause of action therefore arises, when "all internal remedies against the company [are] lost." 679 F.2d at 95. This means that the six-month limitations period begins to run whenever the employee is barred from proceeding to the next step in the grievance procedure. This bar can arise, because the arbitrator reaches a final decision, or, as in this case and in *Badon,* because the Union or employee fails

year statute of limitations was thought to be appropriate and plaintiff filed his complaint well within that three-year period. There is apparent inequity in changing the statute of limitations at this stage of the proceedings.

This Court is of the opinion, however, that the remaining factor is dispositive under the rule in *Cochran.* Retroactive application of *Badon* would further the federal labor policies favoring the "relatively rapid disposition of labor disputes." *Hoosier Cardinal,* 383 U.S. at 707, 86 S.Ct. at 1114; *Mitchell,* 451 U.S. at 63, 101 S.Ct. at 1564. As the Sixth Circuit stated in *Badon:*

> [W]here the parties have contracted to settle claims among themselves, their final decisions should not be exposed to collateral attack for long periods but should become final rather quickly . . . . Otherwise, the internal system will be just another step in a lengthy process of litigation rather than an efficient and unitary method of disposing of the high volume of grievances generated under any large scale employment contract.

679 F.2d at 98 (citations omitted). Although the present complaint was filed well within the three-year limitation period of *Smart,* it was filed beyond the six-month period set out in *Badon.*

■ The grievance and arbitral process has been recognized as a cornerstone of labor-management relations. As the Supreme Court stated in the *Steelworkers Trilogy,*[6]

> Courts and arbitration in the context of most commercial contracts are resorted to because there has been a breakdown in the working relationship of the parties; such resort is the unwanted exception. But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by

molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

363 U.S. at 581, 80 S.Ct. at 1352. Retroactive application of *Badon,* although it may seem unjust to an individual plaintiff, has the effect of strengthening the "system of industrial self-government." For this reason, the second factor in the *Chevron Oil* test does not favor non-retroactivity and *Badon* must be given retroactive effect. This result is in accord with the results reached by several Circuit and District Courts. *See, e.g., Carpenters Lo. 1020 v. FMS Corp.,* 658 F.2d 1285 (9th Cir. 1981); *Sear v. Cadillac Automobile Co. of Boston,* 654 F.2d 4 (1st Cir. 1981); *Davidson v. Roadway Express, Inc.,* 650 F.2d 902 (7th Cir. 1981); *Stahlman v. Kroger Co.,* 542 F.Supp. 1118 (E.D. Mo. 1982). *But cf. Singer v. Flying Tiger Lines,* 652 F.2d 1349 (9th Cir. 1981); *Talley v. United States Postal Service,* 532 F.Supp. 786 (D. Minn. 1982) (applying *Mitchell* prospectively). Perhaps more importantly, the result reached by this Court is in accord with the consensus of those cases in the Eastern District of Michigan which have reached the question of the retroactivity of *Badon* or *Mitchell. See, e.g., Hakim v. Wolverine Packing Co.,* No. 81–40389 (E.D. Mich., September 3, 1982) (Newblatt, J.); *Sanders v. Stone Container Corp.,* No. 81–74436 (E.D. Mich., August 26, 1982) (Gilmore, J.); *Hren v. Ford Motor Co.,* No. 82–70563 (E.D. Mich., August 9, 1982) (Diggs Taylor, J.); *Zahnow v. Great Lakes Dist. Co.,* 544 F.Supp. 553 (E.D. Mich. 1982) (Freeman, J.); *Jackson v. Clark Equip. Co.,* No. 80–60102 (E.D. Mich., July 20, 1982) (Joiner, J.); *James v. Ford Motor Co.,* No. 81–73709 (E.D. Mich., July 19, 1982) (Cohn, J.); *Curry v. Great Lakes Steel Corp.,* No.

to proceed to the next step within the contractual limitations period. *See* 679 F.2d at 95.

**6.** *United Steelworkers of America v. American Mfg Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America*

*v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United ed Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

81–73892 (E.D. Mich., July 2, 1982) (DeMascio, J.); *Jackson v. Wonder Bread,* No. 81–70609 (E.D. Mich., June 30, 1982) (Guy, J.); *Kikos v. International B'hood of Teamsters,* 526 F.Supp. 110 (E.D. Mich. 1981) (Cook, J.). *But cf. Kennard v. United Parcel Service,* 531 F.Supp. 1139 (E.D. Mich. 1981) (Guy, J.) (applying *Mitchell* prospectively).

Therefore, the defendants' motions to dismiss are granted.