**OCCIDENTAL CHEMICAL CORPORATION, Plaintiff,**

v.

**LOCAL 820, INTERNATIONAL CHEMICAL WORKERS UNION, Defendant.**

**No. G84–402 CA.**

United States District Court, W.D. Michigan, S.D.

July 23, 1985.

OPINION

BENJAMIN F. GIBSON, District Judge.

This action is brought directly under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate an arbitration award.

Suit was instituted by Occidental Chemical Corporation on April 12, 1984 to vacate an arbitration award which issued on November 10, 1983. Arbitrator Robert G. Howlett found in favor of Mr. E.A. Shirtum, a retired Occidental employee, and required that Mr. Shirtum's pension benefits be calculated without including a "service ratio reduction factor" (SRRF).[1] The

---

1. A service ratio reduction factor is a calculation used in determining monthly pension benefits. Its purpose is to reduce the benefits of

workers taking early retirement. It is a fraction, having as its numerator the total number of years worked at Occidental, and as its denominator the total number of years worked if the employee were to retire at age 62. (If the employee retires at 62 the fraction is 1.) This fraction is then multiplied by the pension amount.

collective bargaining agreement between Occidental and Local 820, of which Mr. Shirtum was a member, required that employees retire in accordance with the provisions of company's retirement program, which includes a pension plan. The pension plan documents contain the terms of the plan.

It is undisputed that the SRRF calculation was included in the company's 1974 and 1976 pension plan documents. It further appears from the record that the 1980 pension plan includes the SRRF calculation.

Following the installation of the 1976 plan, Occidental retained new actuaries who drafted a new pension plan. The new plan, which became effective January 1, 1977, did not contain the SRRF provision. The company alleges the SRRF was omitted due to an oversight, and that the company, the union and the employees understood that pension benefits were to be computed using it. The company further alleges it was unaware the SRRF was omitted until 1981, at which time it drafted a pension plan using the SRRF calculation.

Mr. Shirtum contends he relied on the 1977 pension plan documents when he elected to retire. The company, however, applied the SRRF to his pension benefit calculation, and reduced his pension benefits accordingly.

Mr. Shirtum filed a grievance on August 6, 1982. The parties agreed to an arbitration, which was held on April 29, 1983. The award issued November 10, 1983. This matter is now before the Court on cross-motions for vacation and enforcement of Arbitrator Howlett's award. After a thorough consideration of the briefs, and having heard the arguments of counsel, the Court is of the opinion that plaintiff's suit to vacate the award is time-barred by the provisions of the United States Arbitration Act of 1925, 9 U.S.C. § 12. Therefore, plaintiff's motion to vacate the award is denied, and this case is dismissed.

## DISCUSSION

In *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983),

the Supreme Court ruled that the six month limitations period of § 10(b) of the National Labor Relations Act is applicable to the employee's breach of duty of fair representation claim against his union and breach of collective bargaining agreement claim against his employer. The Court adopted § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), because § 301 of the Labor Management Relations Act does not contain a limitations period. Prior to *DelCostello*, the courts looked to "the nature of the cause of action" and applied the most analogous state statute of limitations to claims brought under § 301. *See Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (suit by union against company for breach of collective bargaining agreement).

Although *DelCostello* establishes a statute of limitations period for hybrid claims under § 301, it does not address actions arising solely under § 301 or, more specifically, suits to vacate arbitration awards brought directly under § 301. *See DelCostello*, 452 U.S. at 158–59, 103 S.Ct. at 2287, fn. 12. Every court of appeals which has considered this issue in the arbitration context has concluded the holding of *DelCostello* does not apply to such suits. *Federation v. Westinghouse Electric Corp.*, 736 F.2d 896 (3rd Cir.1984) (suit to *compel* arbitration, applying the six month period of § 10(b) by analogy); *United Brotherhood of Carpenters and Joiners v. FMC Corp.*, 724 F.2d 815 (9th Cir.1984) (suit to *vacate* arbitration, applying 20 day state statute); *International Union of Electrical, Radio and Machine Workers v. Ingram Mfg. Co.*, 715 F.2d 886 (5th Cir.1983) *en banc denied* 710 F.2d 677 (suit to *enforce* arbitration, applying four year state "catch—all" statute); *Derwin v. General Dynamics Corp.*, 719 F.2d 484 (1st Cir. 1983) (suit to *confirm* arbitration, applying either six or twenty year state statute).

Michigan's statute of limitations applicable to actions to vacate arbitration expressly excludes "collective bargaining contracts between employers and employees." M.C. L.A. § 600.5001(3). Therefore, this section

is inapplicable to actions under § 301. *Badon v. General Motors Corp.*, 679 F.2d 93, 98 (6th Cir.1982). However, this Court concludes that the federal labor policies identified in *DelCostello* are best protected by adoption of the three month period of the United States Arbitration Act. Because *DelCostello* represents a new approach, based more on labor policy considerations than on the former practice of pigeonholing a § 301 claim in an "analogous state claim" category, some discussion of legal background is necessary.

a. Hoosier Cardinal and the analogous state claim analysis.

The Court in *United Auto Workers v. Hoosier Cardinal*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) likened the union's § 301 claim to a contract action and adopted Indiana's six year statute applicable to actions for breach of oral contracts, the Court having found that the union's claim was partly based on the written collective bargaining agreement and partly based on "the oral employment contract each employee had made" with the company. 383 U.S. at 699, 86 S.Ct. at 1110. Had the Court not construed the contract as being of a hybrid nature (in the part written-part oral sense), the alternative was to apply Indiana's twenty year limitations period applicable to written contracts.[2]

In electing to apply the shorter limitations period, the Court also relied on the federal policy favoring rapid disposition of labor disputes. *Hoosier Cardinal*, 383 U.S. at 707, 86 S.Ct. at 1114. The Court cited the six months limitations period of § 10(b) of the NLRA as embodying this policy, but reasoned that had Congress intended to also include such a limitation in § 301 suits, it would have done so. The Court rejected the argument that there is a need for a uniform standard with regard to limitations periods, concluding a lack of uniformity in this area is "unlikely to frustrate in any important way the achievement of any significant goal of labor policy." 383 U.S. at 702, 86 S.Ct. at 111.

The Court in *Hoosier Cardinal* also relied on a line of cases which hold that state statutes of limitations govern the timeliness of federal causes of action unless Congress has specifically provided otherwise. The Court cited cases applying this rule which date back to 1895, and stated "... when Congress has disagreed with such an interpretation of its silence, it has spoken to overturn it by enacting a uniform period of limitations." 383 U.S. at 704, 86 S.Ct. at 1112 (citations omitted).

So, although the *Hoosier Cardinal* court recognized a federal interest in rapid disposition of labor disputes, it reasoned that the practice of federalizing analogous state statutes of limitations would not frustrate any federal labor goals.

The rule of *Hoosier Cardinal* was applied to actions to vacate arbitration awards, such as the action presently before this Court, in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). In *Mitchell*, though, the Court made clear that the only issue before it was *which* state limitations period to apply, New York's six year statute governing contract claims or New York's 90 day period for actions to vacate arbitration awards. The Court made clear that it was not passing on the question of whether adoption of a uniform standard is appropriate. *See Mitchell*, 451 U.S. at 61, 101 S.Ct. 1562, fn. 2.[3]

b. Mitchell; toward policy-based limitations.

Although the *Hoosier Cardinal* court applied the six-year period to the breach of

2. The Court reasoned that the claim at issue was hybrid (in the oral/written sense) because proof of the existence and duration of the employment contract was necessary to establish damages for breach of the collective bargaining agreement. The plaintiffs were seeking to recover accumulated vacation pay.

3. The AFL–CIO appeared as amicus curiae before the Supreme Court and urged the Court to adopt the six month period in § 10(b) of the NLRA. At footnote 2, the Court indicated that since certiorari was granted on the issue of which *state* period should apply, it declined to consider the applicability of § 10(b).

collective bargaining agreement claim, the *Mitchell* court adopted the 90 day period (applicable to state actions to vacate arbitration awards) to § 301 suits to vacate arbitration awards. The court in *Mitchell* made clear that such § 301 suits stand on a different footing than breach of collective bargaining agreement suits, such that separate policy considerations should attach to decisions about the proper amount of time to be given to a party seeking to disturb an arbitration award. It appears to this Court that the Court in *Mitchell* sought to apply a limitations period which protects the integrity of the grievance process in labor relations, and, specifically, the arbitration process as a fundamental element of that system.

It is important to bear in mind the observations made in the *Steelworkers Trilogy* that "the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government.... The processing ... machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Although the present case involves a fairly mundane and discrete wrongful discharge complaint, the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union. *See, e.g., Humphrey v. Moore* [375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370] *supra* (seniority rights of all employees). This system, with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as six years later.

*Mitchell*, 451 U.S. at 64–65, 101 S.Ct. at 1564–65.

Whereas the *Hoosier Cardinal* court relied on the "nature of the cause of action" in applying the most analogous state statute of limitations, the *Mitchell* court relied much more on policy considerations. Therefore, the statement that a lack of uniformity in this area is "unlikely to frustrate in any important way the achievement of any significant goal of labor policy," made by the *Hoosier Cardinal* court, could be seriously disputed.

The theoretical underpinnings of *Hoosier Cardinal* were further eroded in *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Also, the *DelCostello* court maintained the distinction, for statute of limitations purposes, between hybrid § 301 suits and actions to vacate arbitration awards.

c. DelCostello.

The Court in *DelCostello* did adopt a uniform limitations period for hybrid claims. Further, the Court again selected a limitations period in accordance with "the national interests in stable bargaining relationships and finality of private settlements." *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294 (citing *Mitchell*, 451 U.S. at 70–71, 101 S.Ct. at 1567–68, Stewart, J., concurring). Most importantly for present purposes, the Court clearly indicated that these policy interests require a shorter period in actions to vacate arbitration agreements than in hybrid § 301 suits.

The court pointed out that in *Mitchell* it analogized the employee's claim to a suit to vacate an arbitration award in a commercial setting. It then distinguished such cases from hybrid claims. "The main difference is that a party to a commercial arbitration will ordinarily be represented by counsel or, at least, will have some experience in matters of commercial dealings and contract negotiation. Moreover, an action to vacate a commercial arbitral award will rarely raise any issues not already presented and contested in the arbitration proceeding itself." *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291.

These points also distinguish hybrid claims from suits to vacate *labor* arbitrations. The present case is illustrative. Both parties were represented at the arbitration by experienced labor representatives. The employee was represented by Mr. Clarence W. Gipson, an international representative of the union. The company, the party seeking to vacate the award here, was represented by counsel, Mr. Thomas P. Gies, who also represents the company in this litigation.

Also, unlike hybrid causes, suits to vacate labor arbitration call upon the district courts to review the same issues which were before the arbitrator, albeit only to consider whether the conclusions about those issues draw their essence from the collective bargaining agreement. *See e.g., United Steelworkers v. Enterprise Wheel and Car Corp.* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

In addition to these differences, the Court noted the difficulty of detecting and mustering evidence to show the union's breach of duty in hybrid cases, as well as the difficulty in ascertaining when the hybrid claim accrued. In suits to vacate labor arbitration, the evidence is usually limited to events presented in the arbitration hearing. The problem of pinpointing the accrual of a cause of action is virtually nonexistent, such claims accruing when the arbitrator's decision is rendered.

So, the analogy made in *Mitchell*, and reaffirmed in *DelCostello*, between commercial and labor arbitration is clearly an appropriate one. In addition, the policy considerations set forth by the Court in those two cases clearly dictate that parties seeking to disturb an arbitrator's award—agreed between the parties through collective bargaining to be the final and binding stage of the grievance process—do so quickly, or have its right to do so cut off.

The Supreme Court in *Mitchell* and *DelCostello* applied considerations of labor policy to fill the void left by the omission in § 301 of a limitations period. These cases establish that a party seeking to assert a hybrid § 301 claim should do so quickly; and that a party seeking to assert a § 301 claim to vacate an arbitration award should do so quicker still. It is with these considerations in mind that the Court will consider the applicable period under the present circumstances.

d. The applicable period.

The defendant contends that the Court has two options available: the 21 day period applicable to state actions to vacate arbitration awards, G.C.R. 769.9(2) (governing procedures for statutory arbitration under M.C.L.A. 600.5001), or the 3 month period under the United States Arbitration Act, 9 U.S.C. § 12.[4]

The *Mitchell* case requires that state arbitration statutes apply. Here, as is noted

---

**4.** 9 U.S.C. § 12 provides:

NOTICE OF MOTIONS TO VACATE OR MODIFY; SERVICE; STAY OR PROCEEDINGS Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

The Act expressly applies to "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... or an agreement in writing to arbitration an existing controversy arising out of such a contract, transaction...."

The Court notes that, unlike § 12 governing motions to vacate, the Act provides a one year period in which any party may move to *confirm* the arbitration award. *See* 9 U.S.C. § 9. The adoption by the Congress of a shorter period with respect to vacating awards is consistent with the states' policy of quickly cutting off the ability of a party to upset a decision made by an uninterested third party.

earlier, the terms of the state statute exclude its application to collective bargaining agreements. M.C.L.A. 600.5001(3). When requested to apply the 21 day provision in a hybrid § 301 case, the Sixth Circuit ruled that "[t]he state has enunciated a clear policy relating labor disputes to the vacation of arbitration awards and this court, under the combined effect of *Hoosier Cardinal* and *Mitchell* is bound by that decision." *Badon v. General Motors Corp.*, 679 F.2d 93, 99 (6th Cir.1982). Likewise, this Court is bound by the Sixth Circuit's construction of Michigan's arbitration rule, and concludes, consistent with the express language of the rule and the *Badon* decision, that it is inapplicable to § 301 suits to vacate arbitration.[5]

Therefore, the Court concludes that the 3 month period in the United States Arbitration Act should apply. The three month period reflects the federal policy of quickly cutting off the ability of a party to upset an arbitration award.

This policy, with its emphasis on private dispute settlement, is embodied in § 12 as well as in the state limitations periods governing arbitration. In 1982, 28 of the 42 state arbitration statutes contained limitation periods of 90 days; 9 were shorter, 3 of the periods were based on the term of court, and only 2 states had periods *longer* than 90 days. *Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1564, fn. 5. The Michigan statute allows an aggrieved party only 21 days to sue to upset an award.

Other courts have refused to apply the limitation periods in the Arbitration Act. *International Union of Electrical, Radio and Machine Workers v. Ingram Man'g Co.*, 715 F.2d 886 (5th Cir.1983); *Derwin v. General Dynamics Corp.* 719 F.2d 484 (1st Cir.1983). However, this court is of the opinion that the *Ingram* decision, involving

a state statute which excluded collective bargaining agreements, runs contrary to the federal labor policy by adopting of a 4 year period. The *Derwin* decision does not involve a state statute which excludes collective bargaining agreements from coverage, so the court had an available state statute.

This Court concludes that § 12 of the Arbitration Act best accommodates the federal interests at stake in suits to vacate arbitration, and shall apply it to the matter presently before the Court.

### CONCLUSION

This suit was filed on April 12, 1984, 153 days after the award was issued. Section 12 provides for three months in which to seek to vacate such awards. The plaintiff having failed to sue within the 3 month period, his § 301 suit is barred. Therefore, the plaintiff's motion to vacate arbitration is denied, and this case is dismissed.

---

**5.** The defendant cites *Stevens v. Gateway Transportation Co.,* 696 F.2d 500, 501 (7th Cir.1982) for the proposition that the court can adopt state arbitration limitations periods despite express language excluding collective bargaining agreements. However, the Seventh Circuit in *Stevens* did not expressly adopt the Illinois statute. It did not rule whether the state 90 day statute or § 10(b) of the NLRA applied, since the § 301 claim was barred under both rules. More importantly for present purposes, the *Stevens* decision would have directly conflicted with the *Badon* decision in this circuit had it adopted the Illinois statute, and this Court is of course bound to follow the Sixth Circuit in such situations.