Willie ROBERSON, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION, DETROIT DIESEL ALLISON DIVISION, a Delaware Corporation (83–1297); General Motors Hourly Rate Employees Pension Fund (83–1496), Defendants-Appellees.

Nos. 83–1297, 83–1496.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted May 2, 1986.

Decided June 17, 1986.

Willie Roberson, Detroit, Mich., for plaintiff-appellant.

David M. Davis, Detroit, Mich., for defendants-appellees.

Before CONTIE and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

RYAN, Circuit Judge.

In these two consolidated cases, plaintiff-appellant Willie Roberson, proceeding *pro se*, asks this court to reverse the district court's grant of summary judgment to defendants in both cases. In the first action, filed in federal court against the General Motors Hourly Rate Employees Pension Plan (hereinafter, GM pension plan), plaintiff sought review of GM's denial of disability pension benefits under applicable provisions of the collectively bargained national agreement between GM and the UAW (hereinafter GM–UAW contract). In the second, filed in Wayne County Circuit Court in Michigan and removed to federal district court by defendant, plaintiff alleged that the termination of his Blue Cross/Blue Shield coverage, pursuant to a settlement agreement between the parties with respect to a Michigan workers' compensation claim, violated both the GM–UAW contract and the workers' compensation settlement agreement. We affirm the decisions of the district court.

Appellant began to work for General Motors at its Detroit Diesel Allison Division on March 28, 1967. He was an hourly rate employee and, as such, the terms and conditions of his employment were controlled by the GM–UAW contract. On January 20, 1978, appellant ceased active employment, and was placed on a sick leave of absence. He received sickness and accident benefits for one year pursuant to the General Motors Insurance Program for Hourly Rate Employees, incorporated within the Supplemental Agreement Covering Insurance Program, Exhibit B to the GM–UAW contract (hereinafter GM insurance program).

After exhaustion of these benefits, appellant began receiving extended disability benefits, which he continues to receive. Appellant also receives social security disability benefits.

In November 1980, appellant, then represented by counsel, filed a petition with the Michigan Bureau of Workers' Disability Compensation, claiming that he was disabled as a result of job-related harassment and pressure in his duties as a machine repairman, and seeking workers' compensation disability benefits. The matter came before an administrative law judge of the Bureau of Workers' Disability Compensation, on August 31, 1981. The parties agreed to settle the claim and redeem liability in the amount of $10,000, pursuant to Mich.Comp.Laws Ann. § 418.835 (West 1985). The documents executed at the redemption hearing included an agreement to redeem liability, by which appellant agreed to settle any and all claims for workers' disability compensation in consideration for the payment of $10,000, and a resignation of employment, signed by appellant, in which he stated:

> I hereby voluntarily quit my employment with General Motors Corporation.

> I understand that my eligibility for, or entitlement to, benefits or privileges under any of the employe benefit programs of General Motors applicable to me will be the same as those of any other employe who voluntarily quits employment with the Corporation.

At the redemption hearing, after appellant testified, counsel for General Motors stated:

> MS. STENFELDT: I have a couple of questions and a statement.

> First of all, on behalf of the General Motors Corporation I can make the statement that this redemption today if approved will have no effect on any vested pension rights that Mr. Roberson may have at this time under the U.A.W. contract. Those vested pension rights include his Blue Cross and Blue Shield Benefits and Extended Disability Bene-

fits. That will continue so long as you are eligible for those. There is a contingency on the Extended Disability and that is of eligibility.

I'd like to ask opposing Counsel to amend the Petition to reflect the items in the Agreement to Redeem Liability.

The administrative law judge then approved the redemption agreement. *See* Mich.Comp.Laws Ann. § 418.836 (West 1985). Appellant's health care benefits were terminated on September 30, 1981.

On November 2, 1981, appellant submitted a second[1] application for disability pension benefits with the GM pension plan, accompanied by a statement from appellant's treating physician, Dr. N. Shah, indicating that the causes of appellant's disability were uncontrolled diabetes, angina pectoris, and depression. The GM Pension Plan, incorporated within the Supplemental Agreement Covering Pension Plan to the GM–UAW contract, provides in pertinent part:

(a) An employe who is totally and permanently disabled prior to attaining age 65, and has at least ten years credited service, shall be eligible for a disability pension as hereinafter provided.

(b) An employe shall be deemed to be totally and permanently disabled only if he is not engaged in regular employment or occupation for remuneration or profit and on the basis of medical evidence satisfactory to the corporation the employe is found to be wholly and permanently prevented from engaging in regular employment or occupation with the corporation at the plant or plants where he has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or nonoccupational in cause, but excluding disabilities resulting from service in the armed forces of any country unless the employe becomes totally and permanently disabled after he has accumulated at least five years of seniority following his separation from service in the armed forces.

Section 3 of the Supplemental Agreement established a Board of Administration, composed of three GM appointees and three UAW appointees, and directed the board to establish procedures for reviewing disability pension applications. Pursuant thereto, the members of the board, on January 25, 1980, entered into an "Agreement Implementing Section 3(c) of the Supplemental Agreement, Pension Plan, dated September 14, 1979." The established procedures for evaluating an application for disability pension benefits consist of: (1) a corporate determination of eligibility for a disability pension; (2) an opportunity for the union to appeal this determination, pursuant to which a designated clinic in the area examines the employee to determine whether he is disabled; (3) if the clinic determines that the employee is totally and permanently disabled, that determination is final and binding upon the parties; (4) if the clinic finds the employee not disabled, then he is examined by the plant physician to determine whether he could do a job in the plant; (5) if the plant physician, after examining the employee, determines that he can perform a job in the plant, such job is identified in writing to the employee, and pension benefits are denied; (6) if the employee is not able to perform a job in the plant, he will be deemed totally and permanently disabled and benefits will be authorized. William Beaumont Hospital, to which appellant was referred for examination and a disability determination, is one of three Michigan clinics approved by the board.

Each clinic is provided with guidelines approved by the board. They state that the examining physician "probably should be a board certified or board eligible internist," and that:

It is expected that this person will elicit a complete past medical history, review of symptoms, and conduct a complete physical examination on the applicant prior to referral. If the nature of the disability is such that it is difficult or beyond the

---

1. Appellant's first application for disability pension benefits, submitted January 17, 1979, was denied, and is not the subject of review in this action.

scope of internal medicine to totally and adequately evaluate the individual, then it is recommended and expected that the supervising physician will refer the subject to a specialist consultant or consultants, for examination and evaluation of his disability.

The guidelines also require the examining physician to prepare a narrative report, and a summary containing a definitive statement as to whether or not the individual is totally and permanently disabled.

Pursuant to these procedures, appellant's application for disability pension benefits was initially denied by the corporation upon a finding that appellant was not totally and permanently disabled and was able to perform a job in the plant. The UAW appealed this determination, and, on September 21, 1982, appellant was examined by Dr. Nicholas G. Makris, a board certified internist at William Beaumont Hospital. Dr. Makris' medical report of October 20, 1982, concluded that appellant was not totally and permanently disabled. On November 24, 1982, appellant was again examined by the plant physician, who identified a job in the plant within appellant's medical restrictions. Appellant was informed on December 6, 1982, that he was ineligible for disability pension benefits under the GM pension plan.

On May 4, 1982, appellant commenced these two separate actions. In both, the district court granted summary judgment to defendant. Appellant's initial appeals were dismissed for failure to pay the docket fee and failure to file a pre-argument statement, but were reinstated by our order of July 10, 1985, and consolidated.

I.

*Disability Pension Claim, No. 83–1496*

■ After a hearing on June 15, 1983, the district court rendered an oral opinion from the bench granting defendant's motion for summary judgment. The district court held that the denial of disability pension benefits in this case did not involve any arbitrary or capricious conduct, nor an abuse of discretion.[2] The court found that the board followed prescribed procedures in referring plaintiff to a board-certified internist. Turning then to Dr. Makris' evaluation, the court noted that the only complaint made by the plaintiff was that Dr. Makris did not refer him to a psychiatrist. The court concluded:

This Court determines that although some other doctor in some other hospital at that point in time, if for no other reason than to ease the burden of making the decision himself, might elect to have sent this individual to a medical specialist; but, as a matter of law, Dr. Makris' decision not to refer him out was not arbitrary, capricious or an abuse of discretion. What the clinical findings that he discovered showed and what the past record showed is a definite depression condition, which was recognized, but which the doctor concluded did not amount to a permanent disability, which was within the general realm of his expertise insofar as being a board-certified internist is concerned in this regard.

Again, the Court is not saying that a more complete job might not have occurred, if this had been referred to a psychiatrist. It is just simply saying that if it is in fact the doctor's conduct that is to be examined under this standard, that it was not arbitrary or capricious, and there are no disputed facts relative to what went on in that decision, and it is ripe for decision on a summary judgment basis.

Similarly, the district court found no action by the board which was arbitrary, capri-

---

**2.** The court noted that there might be some question as to whether this action should be construed as being brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1978), or pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132 (1985), or as a hybrid action.

However, the court noted that the parties agreed, as did the court, that this question need not be pursued because the appropriate standard of review under either type of action is the arbitrary, capricious, or abuse of discretion standard.

cious, or an abuse of discretion. The court concluded that GM and the UAW had agreed upon a method for resolving disability pension claims by referring the claimant to a qualified medical expert, whose evaluation the board agreed to accept. The court saw nothing in the procedures followed, the clinic selected, or the qualifications of the examining physician which would give the board any reason for rejecting Dr. Makris' determination of nondisability.

The district court properly concluded that the appropriate standard of review of the board's denial of disability pension benefits to appellant is whether such action was arbitrary or capricious. *See Norman v. United Mine Workers of America Health & Retirement Funds*, 755 F.2d 509, 510 (6th Cir.1985); *Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees*, 740 F.2d 454, 457 (6th Cir. 1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985). *See also Van Gunten v. Central States, Southeast & Southwest Areas Pension Fund*, 672 F.2d 586, 587 (6th Cir.1982): "The standard for court review of a determination to deny pension benefits is whether the denial was arbitrary, capricious, or in bad faith." We agree with the district court that Dr. Makris did not act arbitrarily or capriciously by not referring appellant to a psychiatric specialist. Dr. Makris testified by deposition that he did not feel it was necessary to refer appellant to a psychiatric consultant, and that, based on the information that he had gathered from appellant, he did not think that the psychiatric complaints could be of such a nature as to render appellant disabled. Dr. Makris also testified that if disorders were more evident, he certainly would have considered a referral, and had referred other patients to psychiatrists. There is no evidence of arbitrary or capricious conduct, nor of any abuse of discretion, in Dr. Makris' decision not to refer appellant to a psychiatric consultant.

Appellant contends that the board acted arbitrarily and capriciously by failing to consider the evidence supporting his claim of psychiatric disability, particularly the report of psychiatrist Dr. J.M.R. Reddy.

However, we agree with the district court that, in light of the collectively bargained procedures for evaluating a claim for disability pension benefits, which were clearly followed in this case, it cannot be said that the board acted arbitrarily or capriciously in accepting Dr. Makris' determination of nondisability. Accordingly, we affirm the decision of the district court in No. 83–1496.

## II.

### *Health Care Benefits Claim, No. 83–1297*

Appellant, relying upon the statement made by GM's counsel at the redemption hearing, contends that the intent of the parties was that the redemption agreement would have no effect on appellant's entitlement to health care benefits, which appellant would continue to receive in conjunction with his extended disability benefits. GM interprets the statement as indicating that appellant would continue to receive health care coverage if his application for disability pension benefits were approved, but that, if disability pension benefits were denied, health care coverage would cease in conjunction with appellant's resignation of employment. GM relies on article III, Section 4 of the Insurance Program, which provides, in pertinent part:

Section 4. Continuance of Coverages Upon Termination of Employment Other Than by Retirement or Death.

(a) Health Care Coverages for an employe who quits or is discharged shall automatically cease as of the last day of the month in which he quits or is discharged or, if later, the date seniority is broken.

The district court heard cross-motions for summary judgment in this action on March 2, 1983. After argument, the court rendered an oral opinion from the bench granting defendant's motion and denying plaintiff's motion, and judgment was entered March 16, 1983. The district court thoroughly reviewed the relevant provisions of the GM–UAW contract and concluded that,

"in terms of the contract, it is clear that health-care coverages under the situation in which this plaintiff terminated his employment ceased at the time that he terminated the employment." The court then addressed the question whether its construction of the contract was contrary to the statements made by the attorney for GM at the redemption hearing:

Now, although as I said in the dialog with counsel on this matter, I can fully understand how the plaintiff's own personal recollection of this verbiage might be a remembrance that he was told his Blue Cross and Blue Shield was going to continue regardless of his redemption, that is not a fair interpretation of this language, particularly in light of the fact that this plaintiff was seeking a disability pension and, in fact, there is litigation involving that. It's currently pending at the present time.

A fair reading of the statement by General Motors' attorney is that whatever vested pension rights plaintiff has, if any, will continue; and, if indeed he has vested pension rights, then those, under the contract, include Blue Cross and Blue Shield. And the mere fact that he got $10,000 for this redemption isn't some sort of automatic setoff or wouldn't reduce whatever pension benefits to which he might be entitled. It is not a declaration, however, that he is entitled to any pension benefits. Indeed, insofar as his disability benefits are concerned, that is being litigated at this particular time. So the Court sees this (a) either as an aid to construction of the contract language, that the statement made at the redemption hearing does not support the contention of the plaintiff relative to the construction he urges of the contract; and, two, to the degree that there is a theory—although not really articulated in the complaint—that this colloquy at the redemption hearing formed some sort of a contract or an agreement in and of itself, the Court—although it would reject that as a matter of law—would say even if that were the case arguendo, that the construction of that so-called new

agreement would not be consistent with what plaintiff claims it is, plaintiff having at best a unilateral misunderstanding of the language.

As the Court also indicated in its dialog with plaintiff's counsel, it has no prayer for rescission of the redemption agreement, modification of the redemption agreement, or any action specifically with regard to the redemption agreement itself, of the litigation before the Court being primarily litigation to mandatorily require General Motors to restore the Blue Cross and Blue Shield benefits which it ceased at the time of the termination.

Accordingly, the Court concludes that the defendant, General Motors, is entitled to summary judgment.

■ We agree with the district court that, under the pertinent provisions of the GM–UAW contract, particularly Article III, Section 4, of the Insurance Program (quoted *supra*, p. 180), appellant's health care coverage was properly terminated in conjunction with his resignation of employment.

The district court was of the view that the statements made by GM's attorney at the redemption hearing did not contradict its construction of the contractual provisions, and that the theory of fraudulent misrepresentation was not pled and was not properly before the court since plaintiff was not seeking to rescind the redemption agreement. However, the court, assuming *arguendo* that a claim of misrepresentation were presented, concluded that the attorney for GM made no misrepresentations at the redemption hearing, and that any misunderstanding of the statements was unilateral on appellant's part.

■ We agree with this portion of the district court's opinion as well. The statements made by GM's counsel at the redemption hearing are, taken in the abstract, somewhat ambiguous. However, the reference to Blue Cross/Blue Shield benefits was made with respect to, and included within, "any vested pension rights

that Mr. Roberson may have at this time under the U.A.W. contract." Thus, continued health care coverage was contingent upon appellant's eligibility for a disability pension. The *other* contingency expressed by GM's counsel involved appellant's receipt of extended disability benefits, which was conditioned upon appellant's continued eligibility for those benefits.[3]

Moreover, as noted, appellant was represented by counsel at all times relevant to the redemption agreement. As in *Badon v. General Motors Corp.*, 679 F.2d 93, 96 (6th Cir.1982), we find this factor relevant in determining whether appellant might have been misled by the statements made by GM's counsel, or confused about the consequences of his resignation. Moreover, as in *Badon,* "the parties were not ... laboring under any mutual mistake of fact. Any mistake regarding the possible consequences of the redemptions was unilateral on [appellant's] part." *Id.*

Accordingly, we affirm the decision of the district court in No. 83–1297.

**3.** The parties do not dispute that appellant's right to extended disability benefits was preserved and that he is entitled to receive such benefits as long as he meets the medical disability requirements for the length of his seniority.